1   Thomas T. Chan (SBN 129606)
        tchan@foxrothschild.com
2   Lena N. Bacani (SBN 213556)
        lbacani@foxrothschild.com
3   FOX ROTHSCHILD LLP
    1055 West 7th Street, Suite 1880
4   Los Angeles, CA 90017-2544
    Telephone:  213-624-6560
5   Facsimile:   310-556-9828

6   Attorneys for Counterclaimant/Third-Party Plaintiff,
    PETER K. LIN
7

8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10

11  JUN-EN ENTERPRISE, a Taiwan         Case No.: CV 12-02734-PSG-SS
    Corporation, AGAPE INDUSTRY CO.,
12  LTD., a Taiwan Corporation,         Hon. Judge Philip S. Gutierrez

13              Plaintiffs,             **COUNTERCLAIMANT'S NOTICE
                                        OF MOTION AND MOTION FOR
14       v.                             SUMMARY JUDGMENT AS TO
                                        COUNTERCLAIMS 1, 2, 5, 6, 7, 8,
15  PETER K. LIN, AGAPE INDUSTRIAL,     AND 9 AND PARTIAL SUMMARY
    INC., and DOES 1 through 10,        JUDGMENT AS TO
16                                      COUNTERCLAIMS 3, 4, 10 AND 13**
                Defendants.
17                                      Date:        June 2, 2014
                                        Time:        1:30 P.M.
18                                      Courtroom:   880

19
    PETER K. LIN, an individual, and    Date Complaint Filed:  03/29/12
20  AGAPE INDUSTRIAL, INC.,             Discovery Cutoff:      10/15/13
                                        Trial Date:            06/24/14
21              Counter-Claimants/Third Party
                Plaintiffs,
22
         v.
23
    JUN-EN ENTERPRISE, a Taiwan
24  Corporation, AGAPE INDUSTRY CO.,
    LTD., a Taiwan Corporation, SHI RU
25  YANG aka TONY YANG, an individual,
    HSIU-YING LU, an individual, and Moes
26  1 through 10,

27              Counter-Defendants and Third
                Party Defendants.
28

───────────────────────────────────────────────
        **COUNTERCLAIMANT'S MOTION FOR SUMMARY JUDGMENT**

TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on June 2, 2014, at 1:30 p.m., or as soon thereafter as this matter may be heard, Counterclaimant and Third-Party Plaintiff Peter K. Lin ("Lin") will bring on for hearing this Motion for Summary Judgment as to Counterclaims 1, 2, 5, 6, 7, 8, and 9 and Partial Summary Judgment as to Counterclaims 3, 4, and 10 before the Honorable Philip S. Gutierrez, in Courtroom 880 at 255 East Temple Street, Los Angeles, CA 90012-3332.

This Motion is made pursuant to Federal Rule of Civil Procedure 56 and is based on this Notice of Motion, the attached Memorandum of Points and Authorities filed herewith in support of the Motion, the Separate Statement of Uncontroverted Facts and Conclusions of Law, and the Declarations of Peter K. Lin and Thomas T. Chan filed concurrently herewith and upon such oral argument that the Court may consider.

This Motion is filed in compliance with the Local Rules, and Court Ordered trial schedule.  This Motion is made following the conference of counsel, pursuant to L.R. 7-3, which took place on March 13, 2014.  Additionally, counsel for Counterdefendants Jun-En Enterprise and Agape Industry Co. Ltd. and Third-Party Defendants Shi Ru Yang aka Tony Yang and Hsiu-Ying Lu (collectively "Counterdefendants") have warranted both to Lin's counsel and to Magistrate Judge Segal that they do not intend to oppose Lin's Motion for Summary Judgment nor participate any further in this litigation, intending instead to default and have judgment entered against them..

Dated:  April 4, 2014                              FOX ROTHSCHILD LLP

                                             By   */s/ Thomas T. Chan*
                                                  Thomas T. Chan
                                                  Lena N. Bacani
                                                  Attorneys for Counterclaimant/Third-Party
                                                  Plaintiff, PETER K. LIN

# TABLE OF CONTENTS

I.    INTRODUCTION 1

II.   STATEMENT OF FACTS ...................................................................1

III.  ARGUMENT..........................................................................................4

    A.    Legal Standards ...........................................................................4

    B.    There Is No Controverted Issue of Material Fact as to Defendants'
          Contract-Based Counterclaims........................................................6

          1.    Breach of Contract Under Common Law (Counterclaim 1) ......6

          2.    Breach of Contract Under California Civil Code
                (Counterclaim 2) ..........................................................8

          3.    Implied-in-Fact Contract (Counterclaim 9) ...............................9

          4.    Common Counts – Account Stated; Book Account; Mutual,
                Open, and Current Account; Money Had and Received; and
                Goods and Services Rendered (Counterclaims 5, 6, 7, and 8) .10

          5.    Damages ....................................................................12

    C.    There Is No Controverted Issue of Material Fact as to Defendants'
          Fraud, Negligent Misrepresentation, and Fraud on the U.S.P.T.O.
          Claims...........................................................................13

          1.    General Fraud and Fraud Under the California Commercial
                Code (Counterclaim 3)................................................13

          2.    Negligent Misrepresentation (Counterclaim 4) ........................16

          3.    Filing of False or Fraudulent Documents Under 15 U.S.C. §
                1120 (Counterclaim 10) ...........................................17

          4.    Unfair Business Practice Under California Business and
                Professions Code § 17200 (Counterclaim 13) ..........................19

IV.   CONCLUSION...........................................................................23

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) ....................................5

*Avidor v. Sutter's Place, Inc.,*
212 Cal. App. 4th 1439, 151 Cal. Rptr. 3d 804 (2013) ....................................11

*Ballard v. Equifax Check Serv., Inc.,*
158 F. Supp. 2d 1163 (E.D. Cal. 2001) .............................................................20

*Bily v. Arthur Young & Co.,*
3 Cal. 4th 370, 11 Cal. Rptr. 2d 51 (1992) .........................................................16

*CDF Firefighters v. Maldonado,*
158 Cal. App. 4th 1226, 70 Cal. Rptr. 667 (2008) ..............................................6

*Celotex Corp. v. Catrett,*
477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 265 (1986) ....................................4, 5

*Committee on Children's Television, Inc. v. General Foods Corp.,*
35 Cal. 3d 197, 197 Cal. Rptr. 783 (1983) .........................................................22

*Davis v. Chevron U.S.A., Inc.,*
14 F.3d 1082 (5th Cir. 1994) ................................................................................5

*Division of Labor Law Enforcement v. Transpacific Transportation Co.,*
69 Cal. App. 3d 268, 137 Cal. Rptr. 855 (1977) ..................................................9

*Fair Isaac Corp. v. Experian Info. Sol'ns, Inc.,*
650 F.3d 1139 (8th Cir. 2011) ......................................................................17, 18

*Farmers Ins. Exch. v. Superior Court,*
2 Cal. 4th 377, 6 Cal. Rptr. 2d 487 (1992) .........................................................20

*Gleason v. Klamer,*
103 Cal. App. 3d 782, 163 Cal. Rptr. 483 (1980) ..............................................10

*Glenn K. Jackson Inc. v. Roe,*
273 F.3d 1192 (9th Cir. 2001) ............................................................................14

*Harper v. Wallingford*,
    877 F.2d 728 (9th Cir. 1989) .......................................................................5

*Hilleary v. Garvin*,
    193 Cal. App. 3d 322, 238 Cal. Rptr. 247 (1987) ................................6

*Hooper v. Frank*,
    16 F.3d 92 (5th Cir. 1994) ..........................................................................5

*In re Bose Corp.*,
    580 F.3d 1240 (Fed. Cir. 2009) ..........................................................17, 18

*Interstate Group Administrators, Inc. v. Cravens, Dargan & Co.*,
    174 Cal. App. 3d 700, 220 Cal. Rptr. 250 (1985) ..............................10

*Jaffe v. Carroll*,
    35 Cal. App. 3d 53, 110 Cal. Rptr. 435 (Cal. App. 1973)....................8

*Joslin v. Gertz*,
    155 Cal. App. 2d 62, 317 P.2d 155 (1957)..........................................11

*Las Palmas Associates v. Las Palmas Center Associates*,
    235 Cal. App. 3d 1220, 1 Cal. Rptr. 2d 301 (1991) ...........................15

*Lewis v. Microsoft Corp.*,
    410 F. Supp. 2d 432 (E.D.N.C. 2006) ..................................................18

*Little v. Liquid Air Corp.*,
    37 F.3d 1069 (5th Cir. 1994) ......................................................................5

*Lujan v. National Wildlife Fed'n*,
    497 U.S. 871, 110 S. Ct. 3177, 111 L. Ed. 2d 695 (1990) ...................5

*Maglica v. Maglica*,
    66 Cal. App. 4th 442, 78 Cal. Rptr. 2d 101 (1998) ..............................9

*Marvin v. Marvin*,
    18 Cal. 3d 660, 134 Cal. Rptr. 815 (1976) ............................................9

*Matsushita Electric Industrial Company, Ltd. v. Zenith Radio Corp.*,
    475 U.S. 574, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986) ....................5

*Medinol Ltd. v. Neuro Vasx, Inc.*,
    67 U.S.P.Q.2d 1205 (T.T.A.B. 2003)....................................................18

---

**COUNTERCLAIMANT'S MOTION FOR SUMMARY JUDGMENT**

*Motors, Inc. v. Times Mirror Co.*,
    102 Cal. App. 3d 735, 162 Cal. Rptr. 543 (1980) ..............................................20

*North Oakland Medical Clinic v. Rogers*,
    65 Cal. App. 4th 824, 76 Cal. Rptr. 2d 743 (1998) ............................................13

*Ochs v. PacifiCare of California*,
    115 Cal. App. 4th 782, 9 Cal. Rptr. 3d 734 (2004) ............................................12

*People v. Southern Pacific Co.*,
    139 Cal. App. 3d 627, 188 Cal. Rptr. 913 (1983) ................................................7

*Ragland v. U.S. Bank Nat'l Assn.*,
    209 Cal. App. 4th 182 (2012) ...........................................................................16

*State Farm Fire & Cas. Co. v. Superior Court*,
    45 Cal. App. 4th 1093, 53 Cal. Rptr. 2d 229 (1996) ..........................................20

*Title Ins. Co. v. State Bd. of Equalization*,
    4 Cal. 4th 715, 14 Cal. Rptr. 2d 822 (1992) ......................................................10

*Torres v. Cantine Torresella S.r.l.*,
    808 F.2d 46, 1 U.S.P.Q.2d 1483 (Fed. Cir. 1986) ..............................................17

*Wang v. Massey Chevrolet*,
    97 Cal. App. 4th 856, 118 Cal. Rptr. 2d 770 (2002) ..........................................22

*Weddington Prods., Inc. v. Flick*,
    60 Cal. App. 4th 793, 71 Cal. Rptr. 2d 265 (1998) ..............................................6

*Zinn v. Fred R. Bright Co.*,
    271 Cal. App. 2d 597, 76 Cal. Rptr. 663 (1969) ..........................................10, 11

**STATUTES**

15 U.S.C. § 1120 ..................................................................................................17

Cal. Civ. Code §§ 1549-50 ....................................................................................8

Cal. Civ. Code § 1572 ..........................................................................................14

Cal. Civ. Code §§ 1619-21 ....................................................................................9

Cal. Civ. Code § 1710 ..........................................................................................16

Cal. Civ. Code § 3287 ...................................................................13

Cal. Civ. Code § 3289 ...................................................................13

Cal. Civ. Code § 3294 ...................................................................15

Cal. Civ. Code § 3301 ...................................................................12

Cal. Civ. Code § 3302 ...............................................................12, 13

Cal. Code Civ. Proc. § 337a ..........................................................11

California Business and Professions Code § 17200 ...................19, 20, 22

**OTHER AUTHORITIES**

1 Witkin, Summary of California Law (10th ed. 2005) Contracts, § 202 .................6

California Civil Jury Instructions No. 302..........................................6, 7

Fed. R. Civ. P. 56 .....................................................................4, 5, 12

Restatement 2d of Contracts, § 19(2) ...................................................9

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Counterclaimant/Third-Party Plaintiff Peter K. Lin ("Lin") has been barraged from every angle by the deceitful and illegal conduct of Counterdefendants Jun-En Enterprise ("JE") and Agape Industry Co., Ltd. ("AIC") and Third-Party Defendants Shi Ru Yang aka Tony Yang ("Yang") and Hsiu-Ying Lu ("Lu") (collectively "Counterdefendants").   Not only did Counterdefendants fail to pay commissions on the parties' May 2009 commission contract, not only did Counterdefendants knowingly make false representations in order to induce Lin to sell their products, not only did Counterdefendants register a trademark that rightfully belonged to Lin – Counterdefendants then had the audacity to turn around and sue Lin on various baseless claims, resulting in various complaints, motions to dismiss, discovery motions, sanctions, and ultimately, the dismissal of Counterdefendants' entire action.

Lin is now left with the task of submitting to the Court this Motion for Summary Judgment, even though Counterdefendants have indicated that they will not oppose the Motion and intend to simply default in this action.   Lin can easily prove each element of his claims, but the fact that Counterdefendants would not simply stipulate to entry of judgment against them only further demonstrates their wrongful conduct and the fraud that they have perpetrated on Lin as well as this Court.

## II.    STATEMENT OF FACTS

From about 1998 until 2004, Lin worked for Counterdefendants in Taiwan. Separate Statement of Uncontroverted Facts and Conclusions of Law on Counterclaimant's Motion for Summary Judgment ("SS") at ¶¶ 13-15.   However, in 2004, Lin, a U.S. citizen, decided to return to the United States and thus ceased his employment with Counterdefendants.   *Id.*   At no point since 2004, during his time in the United States, has Lin ever been an employee of any of the

Counterdefendants, and none of the Counterdefendants have ever paid any U.S. taxes, social security benefits, or workers' compensation insurance on his behalf. *Id.* at ¶¶ 15-16, 44.

Once in the United States, Lin went into business for himself and incorporated various entities, including Agape Industrial, Inc. ("Agape") and Agape Industry, Inc. ("AII"), to facilitate his business. SS at ¶¶ 16-19. Lin has always been the principal and driving force behind these entities. *Id.* at ¶¶ 17-23. None of the Counterdefendants have ever been involved in either Agape or AII – providing <u>no</u> capital, direction or advice, attending <u>no</u> meetings, and being issued <u>no</u> shares or corporate seal in either company. *Id.* at ¶¶ 20-21.

Using the knowledge and business relationships gained from his former employment, Lin sold metal products and the machinery that makes those metal products to customers in the United States. SS at ¶¶ 16-17, 24-25. The products and machines that he sold were manufactured by Counterdefendants as well as various other manufacturers. *Id.* at ¶ 25. In order to turn a profit, Lin would negotiate with potential customers a price higher than that at which he could purchase the product or machine directly from the manufacturer. *Id.* at ¶¶ 26-27. In addition, Lin would submit expenses incurred in connection with a sale to be reimbursed by the manufacturer of a particular sale, including Counterdefendants. *Id.* at ¶ 28.

In early 2009, Counterdefendants decided that they no longer wanted to reimburse Lin for any expenses and only wanted to pay commissions to Lin. SS at ¶¶ 29-30. Counterdefendants lied to Lin that their business was not doing well because of the recession in an effort to induce this new arrangement, when in fact, Counterdefendants' business was expanding and flourishing. *Id.* at ¶¶ 29-30, 65. Counterdefendants then asked Lin to submit a list of estimated expenses and a written proposal based on a commissions-only arrangement. *Id.* at ¶¶ 30, 36. In reliance on Counterdefendants' misrepresentations, Lin did so, providing a

commissions-based model in line with one of an independent sales representative. *Id.* at ¶ 32.  In his written proposal, Lin suggested a threshold of $800,000.00 in sales, at which point any commissions would increase.  *Id.* at ¶¶ 32-33, 35.

Lin then sat down with Yang, who was acting on behalf of Counterdefendants, on several occasions to negotiate the terms of this new relationship.  SS at ¶¶ 31, 33.  Yang hand-wrote on Lin's computer-printed proposal, modifying terms, including raising the threshold to $1 million in sales, at which point Lin's 7% commission would increase to 8%.  *Id.* at ¶¶ 33, 35.  Yang then hand-wrote that this agreement would be effective May 2009.  *Id.* at ¶ 38.  Lin left these meetings reasonably expecting to earn a commission on any future sales of Counterdefendants' products, but Counterdefendants had absolutely no intention of ever paying Lin a single commission.  *Id.* at ¶¶ 41-43, 52-53, 63-65.

In reliance on this agreement, Lin invested substantial amounts of his own time and money to market and promote Counterdefendants' machinery.  SS at ¶ 45.  As a result, Lin generated multiple sales of Counterdefendants' machines, including orders from Locker Group Pty Ltd. on 6/30/09 for $1,005,000.00 and on 9/7/09 for $257,501.00.  *Id.* at ¶¶ 46-48.  Based on these sales, Lin expected to receive commissions of $101,000.00.  *Id.* at ¶¶ 49-50, 52-53, 55-58.  Despite having made substantial profit on these sales critical to Counterdefendants, which accounted for approximately 16% of Counterdefendants' total revenue for the year, and despite Yang specifically thanking Lin and praising his hard work in connection with these sales, Counterdefendants failed to pay Lin any commissions. *Id.* at ¶¶ 51, 62, 66.  Lin made a further demand for payment on May 14, 2010, but Counterdefendants ignored this request, and to date, not a single penny of commissions has been paid to Lin.  *Id.* at ¶¶ 51, 60-62.

Additionally, in connection with his business, Lin came up with, and first commercially used, a stylized "AG" logo (the "AG Mark") no later than February 2004 and has continued to use the AG Mark in commerce ever since.  SS at ¶¶ 68-

70.   Lin has never granted permission to anyone to use the AG Mark, including Counterdefendants, and specifically never granted permission to anyone to register the AG Mark with the U.S.P.T.O.  *Id.* at ¶ 105.

However, Counterdefendants, who were aware of Lin's superior use of the AG Mark, applied for a trademark for the AG Mark with the U.S.P.T.O. on May 13, 2010. SS at ¶¶ 71-72.  This is in spite of the fact that Counterdefendants admit that they were and currently are not actually using (and have no intentions to use) the AG Mark on any products in the United States.  *Id.* at ¶¶ 94-95, 1-10100.  And yet, Counterdefendants affirmed in their application materials that their date of first use of the AG Mark for classes 6 (metal products) and 7 (machinery) was March 1, 2005, and knowingly submitted evidence of first use that included screenshots of Lin's own website, complete with his company name, California address and telephone number, and photographs of a competitors' machine depicting Lin's AG Mark illegally obtained from Lin's computer.  *Id.* at ¶¶ 72-103.  None of the materials submitted by Counterdefendants in connection with their trademark application for the AG Mark evidence any use of the AG Mark by Counterdefendants.  *Id.* at ¶¶ 76, 81-88, 94-95, 100-101.  With this fraudulent evidence before it, the U.S.P.T.O. registered the AG Mark to Counterdefendants as U.S. Registration No. 3,969,166.  *Id.* at ¶ 104.

## III.   ARGUMENT

### A.   Legal Standards

Summary judgment must be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986), *citing* former Fed. R. Civ. P. 56(c).  The movant bears the initial burden of setting forth the basis for its motion and identifying the pleadings and discovery responses that demonstrate the

absence of a genuine issue of material fact.  *Celotex Corp.*, 477 U.S. at 323.

The movant must also affirmatively demonstrate no reasonable trier of fact could find other than for the moving party on any issues on which the movant bears the burden of proof at trial.  *Id.*  Where the burden of proof lies not with the movant, however, the moving party prevails merely by demonstrating an absence of evidence to support the nonmovant's case.  *Id.* at 325.  Once the movant meets its initial burden, the burden then shifts to the nonmovant to set forth, by affidavit or as otherwise provided in Rule 56, "specific facts showing that there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  "This burden to demonstrate a genuine issue of fact increases where the factual context makes the non-moving party's claim implausible."  *Harper v. Wallingford*, 877 F.2d 728, 731 (9th Cir. 1989), *citing Matsushita Electric Industrial Company, Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).  The "mere disagreement or the bald assertion that a genuine issue of material fact exists" does not preclude summary judgment.  *Harper*, 877 F.2d at 731, *citing California Architectural Building Products, Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987), *cert. denied* 484 U.S. 1006, 108 S. Ct. 698, 98 L. Ed. 2d 650 (1988).

The non-moving party's burden is not satisfied by "'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,'" by speculation, by the mere existence of some alleged factual dispute, or "by only a 'scintilla' of evidence."  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994), *quoting Matsushita*, 475 U.S. at 586, *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 888, 110 S. Ct. 3177, 111 L. Ed. 2d 695 (1990), *Hooper v. Frank*, 16 F.3d 92 (5th Cir. 1994) and *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082 (5th Cir. 1994).  "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  *Matsushita*, 475 U.S. at 586.

**B.     There Is No Controverted Issue of Material Fact as to Defendants' Contract-Based Counterclaims.**

Counterdefendants have breached their May 2009 agreement with Lin by failing to pay commissions on at least two sales of Counterdefendants' machines made by Lin, despite their substantial contribution to Counterdefendants' sales and bottom line.  Whether the breach occurred under the common law, California Civil Code, or an implied-in-fact contract (or alternatively, under an account-based theory), there is no disputed material fact that Lin is owed $101,000.00 in commissions.

**1.     Breach of Contract Under Common Law (Counterclaim 1)**

To establish a breach of contract under common law, five elements must be proven: (a) the existence of a contract; (b) the plaintiff's performance or excuse for nonperformance; (c) the defendant's breach; and (e) damages to the plaintiff have occurred as a result of the breach.  *See CDF Firefighters v. Maldonado*, 158 Cal. App. 4th 1226, 1239, 70 Cal. Rptr. 3d 667 (2008).

Here, there is no disputed issue of material fact that a contract was entered into between the parties.  A valid contract exists if the parties have agreed to give each other something of value, the contract terms are clear enough that the parties could understand what each was required to do, and the parties agreed to the terms of the contract.  *Weddington Prods., Inc. v. Flick*, 60 Cal. App. 4th 793, 811, 71 Cal. Rptr. 2d 265 (1998); *Hilleary v. Garvin*, 193 Cal. App. 3d 322, 327, 238 Cal. Rptr. 247 (1987); 1 Witkin, Summary of California Law (10th ed. 2005) Contracts, § 202; *see also* Judicial Council of California Civil Jury Instructions No. 302. Counterdefendants agreed to pay Lin an 8% commission if Lin made sales of Counterdefendants' machinery in excess of $1 million.  SS at ¶¶ 39, 41.  Not only are these terms explicitly clear and provide value to both sides, but the parties each have explicitly acknowledged their assent to the agreement.  *Id.* at ¶¶ 38-39, 41, 55-56.  Accordingly, there is no controverted issue of material fact as to the

1   existence of a valid contract.

2          Moreover, there is no dispute that Lin has performed under the contract and

3   that Counterdefendants have breached.  The only obligation on the part of Lin and

4   the only precondition to payment of a sales commission is Lin's sale of one of

5   Counterdefendants' products.  SS at ¶¶ 55-57.  According to a June 30, 2009,

6   purchase order, Lin sold one of Counterdefendants' machines to Locker Group Pty

7   for $1,005,000.00.  *Id.* at ¶ 46.  A September 7, 2009, purchase order evidences

8   Lin's sale of a second of Counterdefendants' machines to Locker Group Pty for

9   $257,501.00.  *Id.* at ¶ 48.  Counterdefendants admit that Lin submitted these

10  purchase orders to them.  *Id.* at ¶¶ 46-49.  Per the terms of the contract, Lin was

11  owed $101,000.00 in commissions.  *Id.* at ¶ 50.  Further, when Counterdefendants

12  failed to pay any commissions, Lin submitted a demand for payment on May 14,

13  2010, which has been ignored and thus refused.  *Id.* at ¶¶ 60-61; *People v. Southern*

14  *Pacific Co.*, 139 Cal. App. 3d 627, 641, 188 Cal. Rptr. 913 (1983) (if a contract

15  contains no time requirement for performance, a demand for performance must be

16  made by the claimant and performance refused).  Accordingly, Counterdefendants

17  have failed to perform under the contract when they were legally obligated to

18  perform.

19         And finally, because of Counterdefendants' failure to pay the commissions

20  to which Lin is owed under the contract, there is no dispute that Lin has been

21  damaged.  Lin expended substantial time, money and resources to promote, market

22  and sell Counterdefendants' products, believing that he would earn commissions

23  for his efforts, which have not been paid.  SS at ¶¶ 45-49, 51-53, 59, 62.  Lin

24  would not have undertaken such efforts and expended such money and resources

25  but for the contract with Counterdefendants, *id.* at ¶ 59, and there is no question

26  that he has been damaged by Counterdefendants' breach.

27  / / /

28  / / /

### 2. Breach of Contract Under California Civil Code (Counterclaim 2)

The elements to establish a breach of contract under the California Civil Code are similar if not identical to those under the common law. There must exist a valid contract, the claimant has performed or is excused from performing, the defaulting party has breached on his performance, and damage has occurred to the claimant as a result of the defaulting party's breach. *See Jaffe v. Carroll*, 35 Cal. App. 3d 53, 58-59, 110 Cal. Rptr. 435, 438 (Cal. App. 1973).

A valid contract exists when the parties are capable of contracting, consent to contracting, the agreement concerns a lawful object, and there is sufficient cause or consideration. Cal. Civ. Code §§ 1549-50. Lin is an individual over the age of 18 of sound mind and body who voluntarily entered into a contract with Counterdefendants. JE and AIC are corporations capable of contracting for the purposes of doing business. Yang and Lu are both individuals over the age of 18 of sound mind and body and the principals of JE and AIC, respectively. In connection with the negotiations with Lin, Yang acted at all times as the authorized representative for all Counterdefendants and voluntarily entered into the commissions agreement with Lin. SS at ¶¶ 5-6, 34. The commissions agreement provided for the entirely lawful exchange of services and monetary compensation in the form of commissions to be paid to Lin upon his sale of one of Counterdefendants' products. *Id.* at ¶ 39. Accordingly, there is no disputed issue of material fact as to the existence of a valid contract.

Additionally, as explained in section 1, *supra*, Lin has fully performed his obligations under the contract while Counterdefendants have failed to pay commissions owed to Lin pursuant to the contract, despite Lin's demand for performance. Counterdefendants' breach has caused damage to Lin, who expended substantial amounts of his own time, money and resources promoting and selling Counterdefendants' products, which would otherwise not have done

had it not been for his agreement with Counterdefendants.   Lin has thus undoubtedly been damaged by Counterdefendants' breach.

### 3.    Implied-in-Fact Contract (Counterclaim 9)

Alternatively, an implied-in-fact contract may be established by the conduct of the parties, without spoken or written words, Cal. Civ. Code §§ 1619-21; *see also Maglica v. Maglica*, 66 Cal. App. 4th 442, 455, 78 Cal. Rptr. 2d 101 (1998). An implied-in-fact contract is breached just as an express contract is breached under common law.   *See Division of Labor Law Enforcement v. Transpacific Transportation Co.*, 69 Cal. App. 3d 268, 275, 137 Cal. Rptr. 855 (1977).

Courts will consider the previous relationship of the parties, any ongoing conduct, the intentions behind any conduct, whether each party knows or has reason to know that the other party will interpret the conduct as an agreement, and any other circumstances of the case in determining whether an implied-in-fact contract exists.   *See* Restatement 2d of Contracts, § 19(2); *Marvin v. Marvin*, 18 Cal. 3d 660, 678, fn. 16, 134 Cal. Rptr. 815 (1976).

Yang, on behalf of Counterdefendants, was well aware that Lin left their meetings in early 2009 believing that they had worked out a new business arrangement through which Lin would be paid commissions on sales of Counterdefendants' machinery and products.   Yang had made representations that commissions would be paid such that there could be no doubt in the mind of a reasonable objective observer.   SS at ¶¶ 29-30, 33-43.   To further this understanding, Yang even wrote on the memorandum memorializing the terms of their agreement that this new structure would be effective May 2009.   *Id.* at ¶ 38. When Lin then acted in reliance on this implied-in-fact agreement and undertook the time and effort to procure sales of Counterdefendants' products, submitting purchase orders to Counterdefendants to be compensated with his commissions, Counterdefendants did nothing to correct Lin's understanding, even going so far as to thank and praise Lin for his hard work after the first June 30, 2009, sale.   *Id.* at

1   ¶¶ 45-49, 51-53, 60-61.   Accordingly, an implied-in-fact contract can be

2 interpreted from the entirety of the situation and the conduct of the parties.

      **4.**     **Common Counts – Account Stated; Book Account; Mutual, Open, and Current Account; Money Had and Received; and Goods and Services Rendered (Counterclaims 5, 6, 7, and 8)**

7   "'The common count is a general pleading which seeks recovery of money

8 without specifying the nature of the claim.'"   *Title Ins. Co. v. State Bd. of*

9 *Equalization*, 4 Cal. 4th 715, 731, 14 Cal. Rptr. 2d 822 (1992), *quoting* 5 Witkin,

10 Cal. Proc. (3d ed. 1985) Pleading, § 998, p. 422; *see also Interstate Group*

11 *Administrators, Inc. v. Cravens, Dargan & Co.*, 174 Cal. App. 3d 700, 706, 220

12 Cal. Rptr. 250 (1985).   Here, Lin is in possession of detailed records concerning

13 amounts due for services rendered.   Regardless of which common count they fall

14 under, Counterdefendants remain liable to Lin for the $101,000.00 owed.

15   Account stated is proven by (a) previous transactions between the parties

16 establishing the relationship of debtor and credit; (b) an agreement between the

17 parties, express or implied, on the amount due from the debtor to the creditor; and

18 (c) a promise by the debtor, express or implied, to pay the amount due.   *Zinn v.*

19 *Fred R. Bright Co.*, 271 Cal. App. 2d 597, 600, 76 Cal. Rptr. 663 (1969); *see also*

20 *Gleason v. Klamer*, 103 Cal. App. 3d 782, 786-87, 163 Cal. Rptr. 483 (1980).   "If

21 the debtor fails to object to the statement within a reasonable time, the law implies

22 his agreement that the account is correct as rendered."   *Zinn*, 271 Cal. App. 2d at

23 600.

24   In the instant matter, Lin has a history of acting as an independent sales

25 contractor, promoting the products of Counterdefendants, among others, in the

26 United States.   SS at ¶¶ 24-25.   Lin has always been paid for his services rendered,

27 *id.* at ¶ 28, and in May 2009, Lin and Counterdefendants entered into a pure

28 commissions agreement, which not only expressly set the amount due on any

future sales but included a promise by Counterdefendants to pay said amount. *Id.* at ¶¶ 36, 39-42. Under the terms of this agreement, Lin then made two sales of Counterdefendants' machines, which obligated Counterdefendants to pay commissions in the amount of $101,000.00. *Id.* at ¶¶ 47-50, 55-58. When payment was not received, Lin issued a demand for payment, which laid out the terms of the May 2009 contract and the amount owed. *Id.* at ¶¶ 51, 60. Counterdefendants' failure to object to this statement implies their agreement that the accounting contained in this demand is accurate. *Id.* at ¶ 61. Accordingly, Lin is owed $101,000.00 as an account stated.

Alternatively, a book account is established where there is a financial transaction(s) between the parties and an account of debits and credits involved in the transaction(s), on which a certain amount of money is owed. *See Joslin v. Gertz*, 155 Cal. App. 2d 62, 65-66, 317 P.2d 155 (1957); *see also* Cal. Code Civ. Proc. § 337a. As noted above, Lin is owed a certain amount of money on two separate sales of Counterdefendants' machines. These transactions were detailed in the accounting ledgers of Lin, and invoices as well as a later demand for payment were submitted to Counterdefendants, but the amount due was never paid. SS at ¶¶ 46, 48-51, 54, 60-61. Lin is thus owed $101,000.00 as a book account.

Under a theory of money had and received, the defaulting party must have received money intended for the benefit of the claimant but did not use said money for the claimant's benefit nor return the money to the claimant. *See Avidor v. Sutter's Place, Inc.*, 212 Cal. App. 4th 1439, 1454, 151 Cal. Rptr. 3d 804 (2013). Lin made two sales of Counterdefendants' machines, money for which was paid to Counterdefendants. SS at ¶¶ 46-49. A portion of that money, however, was intended for Lin per the terms of the May 2009 commissions contract. *Id.* at ¶¶ 38-41. Specifically, Lin is owed $101,000.00 for the 6/30/09 and 9/7/09 sales of Counterdefendants' machinery. *Id.* at ¶¶ 41, 46, 48-50. Counterdefendants are still in possession of this money and have not used it for the benefit of Lin nor returned

1    it to Lin.  *Id.* at ¶¶ 44, 51, 62.  Counterdefendants owe Lin $101,000.00 as money

2    had and received.

3    And finally, goods and service rendered provides for recovery of damages if

4    the claimant acted pursuant to either an express or implied request for services

5    from the defaulting party, which were intended to and did benefit the defaulting

6    party.  *Ochs v. PacifiCare of California*, 115 Cal. App. 4th 782, 794, 9 Cal. Rptr. 3d

7    734 (2004).

8    Over the course of several meetings, Yang and Lin negotiated a business

9    relationship that encouraged Lin to sell Counterdefendants' products in exchange

10   for Lin receiving a commission on those sales.  SS at ¶¶ 29-38.  Upon reaching a

11   meeting of the minds as to the principal terms, including the 8% rate of

12   commission for sales in excess of $1 million, Yang specifically hand wrote on the

13   memorialization of their agreement that this structure would be effective May

14   2009.  *Id.* at ¶¶ 38-40.  This was an express request for services, on which Lin

15   delivered through his 6/30/09 and 9/7/09 sales of Counterdefendants' products.  *Id.*

16   at ¶¶ 30, 33, 35-36, 39-42, 46-48, 55-57.  Moreover, on August 28, 2009, in

17   between the occurrence of the two sales, Yang specifically texted Lin to thank and

18   praise him for his hard work in connection with the 6/30/09 sale, which only

19   further encouraged Lin to render services to Counterdefendants.  SS at ¶ 47.  Thus,

20   Lin is owed $101,000.00 in commissions as services rendered.

**5.    Damages**

22   The damages suffered by Lin are also not discretionary nor speculative for a

23   motion for summary judgment.  Fed. R. Civ. P. 56; Cal. Civ. Code § 3301.  "The

24   detriment caused by the breach of an obligation to pay money only, is deemed to

25   be the amount due by the terms of the obligation, with interest thereon."  Cal. Civ.

26   Code § 3302.

27   The agreement between Lin and Counterdefendants explicitly provided for

28   an 8% commission to be paid on sales of machinery over $1 million.  SS at ¶ 41.

Lin submitted purchase orders in the amounts of $1,005,000.00 and later $257,501.00, totaling $1,262,501.00. *Id.* at ¶¶ 46, 48-49. Thus, Lin is due $101,000.00 in commissions, per the terms of the agreement. *Id.* at ¶ 50.

Further, Lin is due interest on the outstanding commissions. *See* Cal. Civ. §§ 3287, 3302; *North Oakland Medical Clinic v. Rogers*, 65 Cal. App. 4th 824, 828, 76 Cal. Rptr. 2d 743 (1998) (interest due on a breach of contract is not discretionary). Given that the contract was entered into after January 1, 1986, and does not specify a legal rate of interest, the statutorily imposed interest rate is 10% per annum. Cal. Civ. Code § 3289. Lin submitted the purchase orders, on which commissions were due, in 2009 and made a demand for payment on May 14, 2010. SS at ¶¶ 49, 60-61. Accordingly, Lin is entitled to per a final judgment on his contract-based claims in the amount of $147,874.10.

## C. There Is No Controverted Issue of Material Fact as to Defendants' Fraud, Negligent Misrepresentation, and Fraud on the U.S.P.T.O. Claims.

Counterdefendants have engaged in a pattern of perpetual deceit in connection with their business. Not only did they make certain representations to Lin, knowing these representations to be false, in order to induce services from Lin for the benefit of Counterdefendants, but they also knowingly submitted false material statements and fraudulent documents to the U.S.P.T.O. in connection with their trademark application for the AG Mark. These acts are the very definition of fraud under the common law, California Commercial Code, negligent misrepresentation, and the Lanham Act, and there is no disputed issue of material fact that can contravene this.

### 1. General Fraud and Fraud Under the California Commercial Code (Counterclaim 3)

Under the common law, fraud is demonstrated through a knowingly false misrepresentation made with the intention to deceive or induce reliance, which

causes justifiable reliance by a party who is harmed by said reliance.  *See Glenn K. Jackson Inc. v. Roe*, 273 F.3d 1192, 1201 (9th Cir. 2001); *Wilkins Nat'l Broadcasting Co.*, 71 Cal. App. 4th 1066, 1081 (1999).   Alternatively, the California Civil Code provides that a party to a contract engages in fraud when, with an intent to deceive another party to the contract or induce him to enter into the contract, the party, or someone acting with his connivance, (a) suggests as a fact something that is untrue and of which the party does not believe to be true; (b) positively asserts, in a manner not warranted by the information of the person making it, that which is not true, though he believes it to be true; (c) suppresses that which is true while having knowledge or belief of the fact; (d) makes a promise without any intention of performing it; or (e) commits any other act fitted to deceive.  Cal. Civ. Code § 1572.

JE, AIC and Yang[1] affirmatively induced Lin to negotiate a new business relationship in 2009 by lying to Lin about Counterdefendants' true financial conditions.  SS at ¶¶ 29, 67.  Upon Lin submitting a written proposal, Yang, on behalf of Counterdefendants, negotiated the terms contained therein, even specifically modifying the rate of commission.  *Id.* at ¶¶ 30-42.  Yang then noted on the agreement that it would be effective May 2009.  *Id.* at ¶ 38.

Having gone through several meetings wherein terms were negotiated, a document prepared, and the controlling agent for Counterdefendants indicated when it would be effective, Lin, much like any reasonable person, justifiably relied on these representations and the written agreement that he would be paid commissions and undertook the time and expense to market, promote and ultimately sell Counterdefendants' products.  SS at ¶¶ 45-48, 52-53.  Lin would not have undertaken this time and expense without reasonably believing that he was to be paid commissions, and he lost other potential sales and commissions by

---

[1] Lu has been dismissed from Counterclaims 3 and 4 per the Court's Civil Minutes of November 13, 2013, Docket No. 88.

1  devoting his resources to sales of Counterdefendants' products.  *Id.* at ¶ 59.

2       Yang, however, and JE and AIC through him, were well aware that they had

3  no intention of paying Lin any commissions, as their own deponent testified.  SS at

4  ¶¶ 63-65.  Still, they allowed Lin to believe that he would be paid commissions

5  based on their written agreement and encouraged this belief through verbal

6  representations and hand-written modifications to the contract in order to gain a

7  business advantage over their competitors as well as increase their own sales at

8  Lin's expense.  *Id.* at ¶¶ 30, 33-40, 52-53.  Further, after making one sale on June

9  30, 2009, Yang texted Lin, thanking him for his hard work, which only further

10 caused Lin to believe that he would be compensated and induced him to continue

11 to solicit sales of Counterdefendants' products, resulting in a second sale on

12 September 9, 2009.  *Id.* at ¶¶ 46-48.  Thus, the facts clearly bear out that JE, AIC

13 and Yang committed fraud against Lin.

14       Summary judgment on Lin's fraud claim also warrants the imposition of

15 punitive damages against JE, AIC and Yang.  Although punitive damages are not

16 typically awarded on breach of contract claims, when a defendant fraudulently

17 induces the plaintiff to enter into a contract, punitive damages are recoverable.  *Las*

18 *Palmas Associates v. Las Palmas Center Associates*, 235 Cal. App. 3d 1220, 1238,

19 1 Cal. Rptr. 2d 301 (1991), *citing Glendale Fed. Sav. & Loan Assn. v. Marina*

20 *View Heights Dev. Co.*, 66 Cal. App. 3d 101, 135, 135 Cal. Rptr. 802 (1977).

21 "'The words 'oppression, fraud, or malice' in Civil Code section 3294 being in the

22 disjunctive, fraud alone is an adequate basis for awarding punitive damages.'"  *Id.*

23       Lin's fraud claim is separate from his breach of contract claims and is based

24 on fraudulent representations by JE, AIC and Yang to induce Lin to enter into a

25 new commissions-based contract.  This is in addition to the multitude of other

26 frauds committed by Counterdefendants in this action, including, but not limited

27 to, the improper registration of Lin's AG Mark to try to prevent him from using the

28 mark he designed and developed; the improper filing of this action, which has gone

through multiple complaints and motions to dismiss as well as a sanctions order, only for the original affirmative claims to ultimately be dismissed almost two years later; and the improper discovery obfuscation that has led to multiple discovery motions and ultimately Counterdefendants' current position to default in this litigation.  Not only do these actions support a finding of punitive damages in and of themselves, but they also evidence the grander fraudulent scheme of Counterdefendants to simply bleed Lin dry.

Therefore, a finding as to the availability of punitive damages – in an amount yet to be determined by the Court or trier of fact – is warranted.

### 2.      Negligent Misrepresentation (Counterclaim 4)

The fraudulent acts of JE, AIC and Yang were committed intentionally and with malice aforethought.  However, should the Court not find that standard met, JE, AIC and Yang at least engaged in a negligent misrepresentation to the detriment of Lin.

"Negligent misrepresentation is a separate and distinct tort, a species of the tort of deceit."  *Bily v. Arthur Young & Co.*, 3 Cal. 4th 370, 407, 11 Cal. Rptr. 2d 51 (1992).  "The elements of negligent misrepresentation are (1) a misrepresentation of a past or existing material fact, (2) made without reasonable ground for believing it to be true, (3) made with the intent to induce another's reliance on the fact misrepresented, (4) justifiable reliance on the misrepresentation, and (5) resulting damage."  *Ragland v. U.S. Bank Nat'l Assn.*, 209 Cal. App. 4th 182, 196 (2012); *see also* Cal. Civ. Code § 1710.

Here, Yang, on behalf of himself, JE and AIC, represented to Lin that Counterdefendants' financial condition was dire and further stated, both verbally and in writing, that Lin would be paid an 8% commission on sales of Counterdefendants' machinery over $1 million.  SS at ¶¶ 29-30, 35-41.  Yang made these false representations in order to induce Lin to make sales of Counterdefendants products under a new arrangement, but according to

1    Counterdefendants, they believed Lin to be an employee, and employees would
2    never be entitled to commissions.  *Id.* at ¶¶ 37, 62-66.  The representations made
3    by Yang on behalf of himself, JE and AIC concerning commissions were thus
4    made without reasonable grounds for believing them to be true.  Given the clear,
5    affirmative representations, some of which were reduced to writing, Lin's reliance
6    on these representations was justifiable, and he was harmed when he was not paid
7    what he was owed and what he believed to be owed after incurring time and
8    expense to market, promote and sell Counterdefendants' products.  Accordingly,
9    summary judgment is appropriate as to Lin's negligent misrepresentation
10   counterclaim.

### 3.      Filing of False or Fraudulent Documents Under 15 U.S.C. § 1120 (Counterclaim 10)

13        To demonstrate fraud under 15 U.S.C. § 1120, the applicant must have made
14   a false statement to the U.S.P.T.O., which constitutes a material representation of
15   fact, in connection with an application to register a trademark, with the intent to
16   mislead the U.S.P.T.O.  *See Torres v. Cantine Torresella S.r.l.*, 808 F.2d 46, 48, 1
17   U.S.P.Q.2d 1483 (Fed. Cir. 1986); *Fair Isaac Corp. v. Experian Info. Sol'ns, Inc.*,
18   650 F.3d 1139, 1148 (8th Cir. 2011), *citing In re Bose Corp.*, 580 F.3d 1240, 1243,
19   1245 (Fed. Cir. 2009).

20        Here, JE, AIC and Lu's[2] false statements to the U.S.P.T.O., all made in
21   connection with their application to register a trademark, are numerous.  First of
22   all, JE, AIC and Lu represented to the U.S.P.T.O. that they had developed and
23   were the first to use the AG Mark in commerce.  SS at ¶¶ 72-77, 79, 89-91
24   However, it was actually Lin who came up with the design of the AG Mark,
25   applying it to his businesses' letterhead, business cards, and machinery as early as
26   2004.  *Id.* at ¶¶ 68-70.  Counterdefendants had no hand in the design of the AG

---

[2] Yang has been dismissed from Counterclaim 10 per the Court's Civil Minutes of November 13, 2013, Docket No. 88

Mark and never used it in commerce prior to the filing of their trademark application. *Id.* at ¶¶ 94-95, 100-101.

Secondly, the documents submitted by JE, AIC and Lu to the U.S.P.T.O. to demonstrate their first use were actually evidence of Lin's use: screenshots from a website developed by Lin as well as documents taken from Lin's hard drive. SS at ¶¶ 76, 81-86. These documents clearly evidenced <u>Lin's</u> first use of the AG Mark and not Counterdefendants'.

Finally, JE, AIC and Lu specified in their application a variety of trademark classes, specifically including classes 6 (metal products) and 7 (machinery), in which they claimed to be using the AG Mark. SS at ¶¶ 77-78, 90-93. However, Counterdefendants' 30(b)(6) witness testified that, in fact, they never once used the AG Mark in these classes in the United States. *Id.* at ¶¶ 94-95, 100-101.

These statements were not only all false and made in connection with a trademark application, but they all constituted material misrepresentations of fact. False statements as to the use of a trademark in connection with each type of good or service is material. *Medinol Ltd. v. Neuro Vasx, Inc.*, 67 U.S.P.Q.2d 1205, 1209-10 (T.T.A.B. 2003). Misstatements in which the date of first use occurs after the application date are also material representations of fact. *See Lewis v. Microsoft Corp.*, 410 F. Supp. 2d 432, 439 (E.D.N.C. 2006).

Moreover, JE, AIC and Lu clearly made the false statements with the intent to mislead the U.S.P.T.O. into granting the trademark application. Intent can be established by direct evidence or may be inferred from the circumstances. *In re Bose Corp.*, 580 F.3d at 1245; *see also Medinol Ltd.*, 67 U.S.P.Q.2d at 1207-10 (intent inferred where the falsity of the statement was known or should have been known); *Fair Isaac Corp.*, 650 F.3d at 1149 (intent to deceive inferred when aware not using trademark and that others were using same mark).

JE, AIC and Lu clearly knew that they did not develop the AG Mark when they could point to no employee who designed said mark nor any use in commerce

---

in the United States of the AG Mark by them.  SS at ¶¶ 68-71, 87, 94-95, 100-103. JE, AIC and Lu also knew that they had no claim to the AG Mark as they were fully aware of Lin's prior use of the AG Mark, and in fact, Lin repeatedly notified them of their infringing use.  *Id.* at ¶¶ 71, 102-103, 105.

Further, the documents submitted as evidence of first use – documents which came from Lin's hard drive and website – were obviously not evidence of Counterdefendants' use of the AG Mark as they identified Lin's U.S.-based business and pictured Lin's products on their face.   SS at ¶¶ 76, 81-86. Counterdefendants' 30(b)(6) witness <u>immediately and without any doubt</u> identified that the machine depicted in the photographs was not one of Counterdefendants' products but rather a machine manufactured by Counterdefendants' competitor, Lead Long, and that the photograph was amongst items copied from Lin's computer.  *Id.* at ¶¶ 83-87.  Thus, the submission of this photograph, intended to induce the U.S.P.T.O. to grant the trademark registration, was clearly no mistake.

Additionally, Counterdefendants' witness admitted that at the time of filing the trademark application, Counterdefendants had already abandoned any use of the AG Mark.  SS at ¶¶ 100-101.  Even if, *in arguendo*, Lin was an employee of Counterdefendants and used the AG Mark as an employee of Counterdefendants, Counterdefendants' termination of Lin, the source of the entirety of their U.S. business, in January 2010 – prior to the filing of the trademark application – made their statements of current use of the AG Mark false and fraudulent.  Moreover, Counterdefendants' continued non-use of the AG Mark in commerce in the United States for more than three years presumptively abandons the AG Mark.

Accordingly, there is no disputed issue of material fact as to JE, AIC and Lu's fraud upon the U.S.P.T.O.  Summary judgment for Lin is warranted.

### 4. Unfair Business Practice Under California Business and Professions Code § 17200 (Counterclaim 13)

The unfair business practices perpetrated by Counterdefendants against Lin

are numerous and egregious.   Not only are they "unlawful, unfair, [and] fraudulent," causing harm to Lin and his business, but they have also wasted this Court's time and resources for more than two years.

"[U]nfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice…"  Cal. Bus. & Prof. Code § 17200.  Unlawful acts are those that violate some other law.  *Farmers Ins. Exch. v. Superior Court*, 2 Cal. 4th 377, 383, 6 Cal. Rptr. 2d 487 (1992).   As demonstrated herein, Counterdefendants have violated numerous sections of the California Civil Code as well as the Lanham Act and have thus engaged in unlawful business practices under California Business & Professions Code § 17200.  *See State Farm Fire & Cas. Co. v. Superior Court*, 45 Cal. App. 4th 1093, 1103, 53 Cal. Rptr. 2d 229 (1996) (violation of a state statute satisfies Section 17200); *Ballard v. Equifax Check Serv., Inc.*, 158 F. Supp. 2d 1163, 1176 (E.D. Cal. 2001) (violation of a federal statute can satisfies Section 17200).

An unfair business act or practice has been interpreted broadly to allow courts maximum discretion in prohibiting unfair conduct.   *See Motors, Inc. v. Times Mirror Co.*, 102 Cal. App. 3d 735, 740, 162 Cal. Rptr. 543 (1980).   In determining whether a specific act or practice is unfair, however, courts routinely weigh the impact of said business act or practice on its victim(s) against the reasons, justifications and motives behind the act or practice.  *State Farm Fire & Cas. Co.*, 45 Cal. App. 4th at 1103-04.

Here, Counterdefendants induced Lin to enter into a contract on which they had no intention to pay him.  SS at ¶¶ 29-40, 63-65.  As Lin performed services under the contract, they continued to encourage his mistaken belief that he would be compensated for his services in order to further profit from Lin's endeavors.  *Id.* at ¶¶ 46-48.   Even when Lin submitted multiple requests for payment of the commissions owed to him, Counterdefendants merely ignored his requests rather than "correct" his allegedly mistaken belief that he would earn commissions and

1  paid him not one cent – either in the form of commissions, a wage, or reimbursed

2  expenses – for the services rendered.  *Id.* at ¶¶ 49, 51, 60-62.

3      Additionally, Counterdefendants were fully aware that Lin designed and first

4  used the AG Mark in connection with his business in the United States.  SS at ¶¶

5  68-71.  Counterdefendants were also fully aware that they had never used the AG

6  Mark in commerce in the United States.  *Id.* at ¶¶ 94-95, 100-103.  And yet, they

7  chose to register the AG Mark to prevent Lin, the rightful owner, from using it.  *Id.*

8  at ¶¶ 106.  Moreover, in order to accomplish registration, they declared under oath

9  several false statements concerning their ownership and use of the AG Mark and

10 submitted screenshots from Lin's website as well as documents that had been

11 illegally obtained from Lin's computer that actually evidenced <u>Lin's</u> use of the AG

12 Mark, not Counterdefendants.  *Id.* at ¶¶ 75-78, 81-88, 90-101.  Upon issuance of

13 the trademark registration for the AG Mark, Counterdefendants then turned around

14 and sued the very rightful owner, Lin, for trademark infringement to effect their

15 goal of preventing him from using his lawfully owned trademark.  *Id.* at ¶¶ 104,

16 106.

17     Each of these actions has harmed Lin exponentially.  He incurred significant

18 cost and expense in soliciting and marketing Counterdefendants' products, while

19 being provided absolutely no compensation.  SS at ¶¶ 45-46, 48, 51, 59, 61.  He

20 also has been restrained from effectively marketing his services and using the

21 trademark he designed and developed.  *Id.* at ¶¶ 68-70, 104, 106.  And now, he has

22 had to expend hundreds of thousands of dollars defending against a lawsuit that has

23 gone through multiple baseless complaints, multiple motions to dismiss, multiple

24 discovery motions, and multiple motions for sanctions, only to have

25 Counterdefendants voluntarily dismiss their claims at the eleventh hour and inform

26 the Court that they intend to default in the current action.  Weighed against the lack

27 of any justification and Counterdefendants' stated intentions that they wanted to

28 prohibit Lin from using his very own trademark, these acts are the very definition

of unfair.

Finally, JE, AIC and Yang[3] have also engaged in fraudulent business practices in violation of Section 17200.  A business act or practice is "fraudulent" if "members of the public are likely to be deceived."  *Committee on Children's Television, Inc. v. General Foods Corp.*, 35 Cal. 3d 197, 214, 197 Cal. Rptr. 783 (1983).  Unlike Lin's specific counterclaim for fraud, however, establishing a fraudulent business practice under Section 17200 requires no proof of intent, scienter, actual reliance or damages.  *Id.* at 211; *Wang v. Massey Chevrolet*, 97 Cal. App. 4th 856, 871, 118 Cal. Rptr. 2d 770 (2002).

As discussed herein, JE, AIC and Yang perpetrated fraud on Lin by affirmatively inducing him to negotiate a new business relationship with false representations concerning the state of Counterdefendants' business and promises of commissions.  SS at ¶¶ 29-42, 67.  Despite the fact that no scienter is required, JE, AIC and Yang undertook these actions with the specific intent to induce Lin to perform services for Counterdefendants without ever intending to pay him any compensation.  *Id.* at ¶¶ 37, 63-65.  Moreover, they continued to encourage Lin's services (and fail to correct any "misunderstanding" regarding commissions), all the while paying not a cent to Lin.  *Id.* at ¶¶ 47, 51, 62.

Additionally, Counterdefendants then took the AG Mark, which Lin had designed and developed for several years, and registered it with the U.S.P.T.O. using fraudulent documents and false statements to support their application.  SS at ¶¶ 67-88, 94-95, 100-101.  Counterdefendants even admit that they did this in an attempt to block Lin from using his own mark.  *Id.* at ¶ 106.

Finally, after all of these fraudulent and wrongful acts, Counterdefendants then turned around and sued Lin.  Through four complaints, three motions to dismiss, a sanctions order, and various discovery motions due to

---

[3] Lu has been dismissed from the fraudulent business practices aspect of Counterclaim 13 per the Court's Civil Minutes of November 13, 2013, Docket No. 88.

Counterdefendants' ongoing discovery violations, Lin has been forced to incur an excessive amount of attorneys' fees on what amounted to baseless, ultimately dismissed claims intended to overwhelm Lin and deplete his assets.

Thus, clearly, there is no disputed issue of material fact that JE, AIC and Yang have engaged in fraudulent business practices.

## IV.   CONCLUSION

For the foregoing reasons, there being no disputed issues of material fact as to any issue required to enter judgment, Defendants respectfully request that the Court enter summary judgment in the amount of $147,874.10 on Counterclaims 1, 2, 5, 6, 7, 8, and 9 for breach of contract, breach of contract under the California Commercial Code, common counts, and an implied-in-fact contract.  Defendants also respectfully request that the Court enter partial summary judgment as to liability on Counterclaims 3, 4, 10, 12, and 13 for fraud, negligent misrepresentation, filing of false or fraudulent documents with the U.S.P.T.O., false designation of origin, and unfair competition.

Dated:  April 4, 2014                    FOX ROTHSCHILD LLP


                                         By   */s/ Thomas T. Chan*
                                              Thomas T. Chan
                                              Lena N. Bacani
                                              Attorneys for Defendants/Third-Party
                                              Plaintiffs, PETER K. LIN and AGAPE
                                              INDUSTRIAL, INC.

---

**COUNTERCLAIMANT'S MOTION FOR SUMMARY JUDGMENT**