1   Thomas T. Chan (SBN 129606)
         tchan@Foxrothschild.Com
2   Lena N. Bacani (SBN 213556)
         lbacani@foxrothschild.com
3   FOX ROTHSCHILD LLP
    1055 West 7th Street, Suite 1880
4   Los Angeles, CA 90017-2544
    Telephone:   213-624-6560
5   Facsimile:   310-556-9828

6   Attorneys for Counterclaimant/Third-Party Plaintiff,
    PETER K. LIN
7

8                    UNITED STATES DISTRICT COURT

9                  CENTRAL DISTRICT OF CALIFORNIA

10

11  JUN-EN ENTERPRISE, a Taiwan Corporation,      Case No.: CV 12-02734-PSG-SS
    AGAPE INDUSTRY CO., LTD., a Taiwan
    Corporation,                                   Hon. Philip S. Gutierrez
12
13              Plaintiffs,
          v.                                       **DECLARATIONS IN
                                                   SUPPORT OF
14  PETER K. LIN, AGAPE INDUSTRIAL, INC.,          COUNTERCLAIMANT'S
    and DOES 1 through 10,                          MOTION FOR SUMMARY
15                                                  JUDGMENT**
                Defendants.
16
    PETER K. LIN, an individual, and AGAPE
17  INDUSTRIAL, INC.,

18              Counter-Claimants/Third Party      Date Complaint Filed:   03/29/12
                Plaintiffs,                         Discovery Cutoff:       10/15/13
19        v.                                        Trial Date:             06/24/14

20  JUN-EN ENTERPRISE, a Taiwan Corporation,
    AGAPE INDUSTRY CO., LTD., a Taiwan
21  Corporation, SHI RU YANG aka TONY
    YANG, an individual, HSIU-YING LU, an
22  individual, and Moes 1 through 10,

23              Counter-Defendants and Third
                Party Defendants.
24

25

26

27

28

                DECLARATIONS ISO COUNTERCLAIMANT'S MSJ
    ACTIVE 25251858v3 04/15/2014

I, Peter K. Lin, declare as follows:

1.      I am a defendant, counterclaimant, and third-party plaintiff in the above-referenced action and President of co-Defendant Agape Industrial, Inc. ("Agape").  I have personal knowledge of the matters set forth herein, and if called as a witness, I could and would competently testify thereto.

2.      I am a resident of the State of California and a citizen of the United States.  In or about 1998, I moved to Taiwan and was hired by Third-Party Defendant Shi Ru Yang aka Tony Yang ("Yang"), whom I am informed and believe to be the President and principal of Plaintiff Jun-En Enterprise ("JE"), to work for JE.  I was employed by JE until I returned to the United States in or about 2004, at which time, I indicated to JE and Yang that was I quitting my employment due to my impending move.

3.      In or about 2004, when I moved back to the United States, I began working for myself, selling machinery for the production of metal products as well as finished metal products.  I sold machinery and metal products manufactured by a number of companies, including those manufactured by JE and co-Plaintiff Agape Industry Co. Ltd. ("AIC").  I conducted my business through a variety of names, including Agape and Agape Industry, Inc. ("AII").  I created AII in 2005 and Agape later in 2009.  I am the principal of both.  None of the Counterdefendants have ever had any involvement with my business, under any name, including providing any capital, attending any meetings, or receiving any financial documents.

4.      I am informed and believe that Hsiu-Ying Lu ("Lu") is the President and principal of AIC as well as an employee of JE.  I am informed and believe that AIC is closely affiliated with JE in some way, although I am unaware of the exact nature. (JE, AIC, Yang and Lu are collectively referred to hereafter as "Counterdefendants.")

5.      At no point, upon returning to the United States in 2004, was I ever an employee of Counterdefendants.  I am informed and believe that Counterdefendants never paid any U.S. employer taxes nor any social security benefits for me.  I am also

DECLARATIONS ISO COUNTERCLAIMANT'S MSJ

1

ACTIVE 25251858v3 04/04/2014

unaware of any workers' compensation insurance premiums being paid on my behalf by any of the Counterdefendants.

6.      A typical sale of a product or machinery would consist of me approaching or being approached by a potential customer and negotiating a price that was higher than the price at which I could purchase the product or machine that fit their needs directly from the manufacturer.  I would then keep the amount in excess of the manufacturer's sales price as my business profit.  Additionally, prior to May 2009, when I would conclude a sale of a manufacturer's product, I would submit the expenses incurred in connection therewith to the manufacturer for reimbursement.  This was the procedure used in connection with sales of Counterdefendants' products as well, and most of my expenses were reimbursed up to May 2009.

7.      My customers purchased all products through me, and at no time during the sales process did they ever communicate directly with any of the manufacturers.  After the sales order had been completed, if a customer service inquiry arose, my customers would again contact me, and I would put the customer in contact with the manufacturer.

8.      In early 2009, Yang told me that Counterdefendants' sales were not doing well just like the global recession and that Counterdefendants wanted to re-evaluate my independent sales relationship with them.  To that end, Yang asked me to put in writing all of my estimated expenses and propose a new working arrangement based purely on commissions without reimbursement of any expeneses.  I complied with Yang's request and printed the estimated expenses and commission proposal from my computer.  I provided the estimates and proposal to Yang when we met several times to discuss this new relationship.

9.      During the course of our meetings, Yang modified the terms of my proposal and hand-wrote on the document.  One of the terms that was modified, at the agreement of both Yang and I, was that I would receive an 8% commission once I had reached $1 million in sales.  Until that point, the commission was to be 7%.  My

DECLARATIONS ISO COUNTERCLAIMANT'S MSJ

2

proposal had been for an increase in commission rate once sales of $800,000 had been reached, but I agreed to alter this term at Yang's behest.  During these communications, Yang noted several times that under this new arrangement, I would be paid commissions so that I did not have to inflate the price the manufacturer's price to earn a profit on my sales.  Yang hand-wrote on the document that this agreement was effective May 2009.

10.     This commissions-based agreement was in keeping with other agreements I had entered into with other manufacturers.  It is my understanding, from working as a sales person in the metal products and machinery industry for over fifteen (15) years, that the commissions-based model is often a standard practice for manufacturers, who believe that it induces the independent salesperson to sell more of that manufacturer's products and thus incur more overall sales for the manufacturer.

11.     After entering into the May 2009 commission agreement, I expended substantial time and resources in an effort to sell Counterdefendants' products so as to earn the agreed-to commission.  On June 30, 2009, I sold one of Counterdefendants' machines to Locker Group Pty Ltd. for $1,005,000.00.  On September 7, 2009, I sold a second of Counterdefendants' machines to Locker Group Pty Ltd. for $257,501.00.  I am informed and believe that true and correct copies of these purchase orders are attached to the Deposition of Hsin-Yi Chu aka Vincent Chu as **Exhibit 50**.  I forwarded these purchase orders to Counterdefendants and requested payment of my commissions.  At the time of these sales, I believed I would earn $101,000.00 in commissions.  In fact, on August 28, 2009, after my solicitation of the June 30, 2009, but before my solicitation of the September 7, 2009, sale, I received a text message from Tony Yang, in which he thanked me for my hard work.  Attached hereto as **Exhibit A** are true and correct screenshots of the text messages received from Tony Yang on August 28, 2009.  This further led me to believe that I would be compensated (by commissions) for the sales I made of Counterdefendants' products, and thus I solicited the second sale to Locker Group Pty Ltd. on September 9, 2009.  Had I been

DECLARATIONS ISO COUNTERCLAIMANT'S MSJ

3

aware that I would not earn commissions on these sales, my actions would have been different.  Depending on the customer's needs and desires I would have either suggested another manufacturer's product on which I would receive commissions or would have attempted to sell Counterdefendants' products at a marked-up price, per my previous mode of operation, in order to earn a profit.  Alternatively, I also may have not pursued this customer at all.

12.     The only obligation I had under the May 2009 contract was to sell one of Counterdefendants' products, and then I would earn a commission.  I met these obligations through the sales that occurred on August 28, 2009, and September 7, 2009.  I kept a record of these sales, along with other credits and debits, in my business ledger.  To date, no commissions have ever been paid to me on these sales.

13.     On May 14, 2010, letters were sent to Counterdefendants (in both Chinese and English) demanding payment of the outstanding $101,000.00 in commissions.  Attached collectively hereto as **Exhibit B** are true and correct copies of the May 14, 2010, letters.  To date, neither I nor my Taiwanese law firm have ever received a response to this letter, and I continue not to have been paid anything towards the $101,000.00 in commissions owed.

14.     In or about 2004, when I came to the United States, I designed a stylized logo for use in connection with my business:



(hereafter the "AG Mark").

15.     I first used the AG Mark in at least February 2004 when I attended a trade show in Orlando, Florida, and displayed and sold machines displaying the AG Mark.  Since 2004, I have continuously used the AG Mark in connection with my sale of metal products and machinery for the production of metal products.  I have affixed the AG Mark to letterhead, business cards, and brochures as well as the product itself, having tags and metal panels commissioned to be applied directly to the products I

DECLARATIONS ISO COUNTERCLAIMANT'S MSJ

ACTIVE 25251858v3 04/04/2014

sold.  I market my business on the Internet, through publications, and by attending trade shows.  All of my marketing materials include the AG Mark.  Attached hereto as **Exhibit C** are examples of my use of the AG Mark.

16.   In January 2010, Counterdefendants obtained my business computer and copied the documents contained in the computer.  Both Yang and Chiu, Counterdefendants' 30(b)(6) deponent, were present at the time that Counterdefendants obtained my computer

17.   I have reviewed Counterdefendants' application to register the AG Mark with the U.S.P.T.O. and all supporting materials.  I am informed and believe that a true and correct copy of Counterdefendants' trademark application is attached to the Deposition of Hsin-Yi Chu aka Vincent Chu as **Exhibit 43**.  I am informed and believe that a true and correct copy of Counterdefendants' Response to Office Action is attached to the Deposition of Hsin-Yi Chu aka Vincent Chu as **Exhibit 44**.  These documents all appear to be submitted and signed by Lu.  The Application and subsequent Response to Office Action state that Counterdefendants first used the AG Mark in commerce in the United States on March 1, 2005 in classes 6 (metal products) and 7 (machinery).  I had already developed and been using the AG Mark prior to that time in both classes.  Further, I am unaware of any use by Counterdefendants of the AG Mark as of March 1, 2005.  In fact, I am unaware of any use of the AG Mark by anyone other than myself at that time.  Moreover, the documents submitted to the U.S.P.T.O. allegedly evidencing Counterdefendants' use of the AG Mark include screenshots of the website of **my** business, complete with my California address and telephone number.  The documents of use also include photographs of **my** use of the AG Mark that were taken by Counterdefendants from my hard drive in January 2010. Specifically, the photographs show a machine manufactured by Lead Long, a competitor of Counterdefendants, with the AG Mark affixed thereto at my request.  I am also informed and believe that all sales made to the United States of Counterdefendants' products occurred through me, and any use of the AG Mark on

DECLARATIONS ISO COUNTERCLAIMANT'S MSJ

5

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

those products was done upon my instruction.  Accordingly, nothing in the documents

concerning use actually showed any use of the AG Mark in U.S. commerce by

Counterdefendants.

     18.    At no time have I ever given Counterdefendants, or any of them,

permission to use the AG Mark, and in fact, when I discovered their unauthorized use

of the AG Mark, I notified them several times to cease and desist.  At no time have I

ever given Counterdefendants permission to register the AG Mark with the U.S.P.T.O.

     I declare under penalty of perjury under the laws of California that the

foregoing is true and correct.

     Executed April 4, 2014, in Torrance California.

Peter K. Lin

DECLARATIONS ISO COUNTERCLAIMANT'S MSJ
6

ACTIVE 25251858v3 04/04/2014

I, Thomas T. Chan, declare as follows:

1.      I am an attorney duly admitted to practice law and in good standing in the State of California, and licensed to practice before this Court.  I have personal knowledge of the matters set forth herein, and if called as a witness, I could and would competently testify thereto.

2.      On October 8, 2013, the deposition of Daniel Roan, C.P.A., was conducted upon the subpoena of Counterdefendants.  H. G. Robert Fong, of Ku & Fong Law Offices, appeared for Counterdefendants.  My colleague, Lena N. Bacani, of Fox Rothschild, LLP, appeared for Lin and co-Defendant Agape.  Attached hereto as **Exhibit D** are true and correct excerpts of the transcript from the deposition of Daniel Roan.

3.      On October 15, 2013, the deposition of Peter K. Lin was conducted upon the Notice of Deposition served by Counterdefendants.  H. G. Robert Fong, of Ku & Fong Law Offices, and Russell J. Cole, of DePasquale & Cole, appeared for Counterdefendants.  My colleague, Lena N. Bacani, of Fox Rothschild, LLP, once again appeared for Lin and Agape.  Attached hereto as **Exhibit E** are true and correct excerpts of the transcript from the deposition of Peter K. Lin.

4.      On February 12 and 13, 2014, the 30(b)(6) depositions of Jun-En Enterprise and Agape Industry Co. Ltd. were conducted upon a Notice of 30(b)(6) Deposition served by my office.  The designated 30(b)(6) witness for both Jun-En Enterprise and Agape Industry Co. Ltd. was Hsin-Yi Chiu aka Vincent Chiu.  I appeared on behalf of Lin.  H. G. Robert Fong, of Ku & Fong Law Offices, appeared on behalf of Counterdefendants.  Attached hereto as **Exhibit F** are true and correct excerpts of the transcript from the 30(b)(6) depositions of Jun-En Enterprise and Agape Industry Co. Ltd.

5.      Upon the cessation of the deposition on February 13, 2014, I had not yet completed my questioning of Mr. Chiu.  Additionally, there were several topics outlined in the notices of deposition on which Mr. Chiu was unable to testify.

DECLARATIONS ISO COUNTERCLAIMANT'S MSJ
7

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Accordingly, Magistrate Judge Segal ordered, on March 10, 2013, that Counterdefendants were compelled to produce additional 30(b)(6) witnesses for the corporate entities along with Third-Party Defendants Yang and Lu for deposition no later than March 21, 2014.  Counterdefendants, however, refused to appear and have indicated both to Lin and the Court that they will not comply with the Court's March 10, 2014, order nor any further orders of this Court and intend simply to default in this action.  Lin has laid out these facts and asked for sanctions, including terminating sanctions, in the Second Declaration of Thomas T. Chan, filed on March 21, 2014.

6.      In light of Counterdefendants' indications that they intend simply to default, as well as Counterdefendants' overtures regarding withdrawal as counsel, Lin's counsel proposed to Counterdefendants' counsel, on March 26, 2014, that they merely stipulate to entry of judgment.  An email proposing the same was sent on March 26, 2014.  Attached hereto as **Exhibit G** is a true and correct copy of the email sent to Counterdefendants' counsel on March 26, 2014.  When no response was received, a follow-up email was sent on April 1, 2014.  Attached hereto as **Exhibit H** is a true and correct copy of the email sent to Counterdefendants' counsel on April 1, 2014.

7.      On April 3, 2014, I received an email from Counterdefendants' counsel informing that Counterdefendants had informed their counsel to "expend no further effort to defend the counter-claim and third-party complaint against them, as they do not intend to contest the case."  Attached hereto as **Exhibit I** is a true and correct copy of the email received from Counterdefendants' counsel on April 3, 2014.  My associate then responded, inquiring again if they would stipulate to entry of judgment.  Attached hereto as **Exhibit J** is a true and correct copy of the email responding to opposing counsel.  As of the filing of this Motion, no response has been received.

8.      In accordance with Local Rule 7-3, Lin and Counterdefendants met and conferred on Lin's intend motion for summary judgment on March 13, 2014.

1      I declare under penalty of perjury under the laws of California that the

2  foregoing is true and correct.

3      Executed April 4, 2014, in Los Angeles, California.

4

5

6                                       */s/ Thomas T. Chan*
                                       Thomas T. Chan

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATIONS ISO COUNTERCLAIMANT'S MSJ

9

ACTIVE 25251858v3 04/04/2014