1  Thomas T. Chan (SBN 129606)
       tchan@foxrothschild.com
2  Alan C. Chen (SBN 224420)
       achen@foxrothschild.com
3  Grace Y. Du (SBN 279084)
       gdu@foxrothschild.com
4  FOX ROTHSCHILD LLP
   1055 West 7th Street, Suite 1880
5  Los Angeles, CA 90017-2544
   Telephone:  213-624-6560
6  Facsimile:   310-556-9828

7  Attorneys for Counterclaimants/
   Third-Party Plaintiff, PETER K. LIN
8  and AGAPE INDUSTRIAL, INC.

9              UNITED STATES DISTRICT COURT

10            CENTRAL DISTRICT OF CALIFORNIA

11  JUN-EN ENTERPRISE, a Taiwan          Case No.: CV 12-02734-PSG-SS
    Corporation, AGAPE INDUSTRY CO.,
12  LTD., a Taiwan Corporation,          Hon. Judge Philip S. Gutierrez

13              Plaintiffs,              **COUNTERCLAIMANTS PETER K.
                                         LIN AND AGAPE INDUSTRIAL,
14       v.                              INC.'S NOTICE OF MOTION AND
                                         MOTION FOR DEFAULT
15  PETER K. LIN, AGAPE INDUSTRIAL,      JUDGMENT; MEMORANDUM OF
    INC., and DOES 1 through 10,         POINTS AND AUTHORITIES;
16                                       DECLARATIONS OF PETER LIN
                Defendants.              AND ALAN C. CHEN IN SUPPORT
17                                       THEREOF; [PROPOSED] ORDER**

18  AND RELATED COUNTERCLAIMS.           Date:           August 18, 2014
                                         Time:           1:30 P.M.
19                                       Courtroom:      880

20                                       Date Complaint Filed:   03/29/12

21

22

23

24

25

26

27

28

---

**COUNTERCLAIMANTS' MOTION FOR DEFAULT JUDGMENT**

ACTIVE 26232930v2 07/07/2014

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on August 4, 2014, at 1:30 p.m., or as soon thereafter as this matter may be heard, Counterclaimants and Third-Party Plaintiff Peter K. Lin ("Lin") and Agape Industrial, Inc. ("Agape") (collectively "Counterclaimants") will bring on for hearing this Motion for Default Judgment before the Honorable Philip S. Gutierrez, in Courtroom 880, at 255 East Temple Street, Los Angeles, California 90012-3332.

This Motion is made pursuant to Federal Rule of Civil Procedure 55, the Court's Orders dated June 24, 2014 (Docket No. 180) and May 28, 2014 (Docket No. 173), and is based on this Notice of Motion, the attached Memorandum of Points and Authorities, and the Declarations of Peter Lin and Grace Du filed concurrently herewith and upon such oral argument that the Court may consider.

This Motion is made following meet and confer between counsel, pursuant to L.R. 7-3, which commenced on or about May 20, 2014. Declaration of Alan C. Chen ("Chen Decl.") ¶2-4. Additionally, counsel for Counter-Defendants Jun-En Enterprise and Agape Industry Co. Ltd. and Third-Party Defendants Shi Ru Yang (as known as Tony Yang) and Hsiu-Ying Lu (collectively "Counterdefendants") have warranted both to Counterclaimants' counsel and to this Court that they do not intend to further contest this matter. *Id.* at ¶ 6.

Dated: July 7, 2014                          FOX ROTHSCHILD LLP


By:   */s/ Alan C. Chen*
_____
Thomas T. Chan
Alan C. Chen
Grace Y. Du
Attorneys for Counterclaimants/Third-Party
Plaintiff PETER K. LIN and AGAPE
INDUSTRIAL INC.

# **TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION ................................................................................. 1

II.   STATEMENT OF FACTS ................................................................... 1

III.   ARGUMENT ....................................................................................... 4

    A.   Default Judgment Should Be Entered ..................................... 4

        1.   The Procedural Prerequisites for Default Judgment Have Been Satisfied ................................................................ 4

        2.   All Factual Allegations Contained in the Counterclaims Are Deemed Admitted ................................................ 4

        3.   The Court Should Exercise Its Discretion to Grant Default Judgment ................................................................. 5

            a.   Prejudice to Counterclaimants ............................................ 6

            b.   The merits of the plaintiff's substantive claim and the sufficiency of the complaint………………………….6

                (1) Contract-Based Claims .................................................. 6

                (2) Common Counts ....................................................... 7

                (3) Fraud-Based Claims .................................................. 9

                (4) Filing of False or Fraudulent Documents under 15 U.S.C. §1120………………………………………10

                (5) Trademark Infringement and False Designation of Origin under the Lanham Act ................................... 11

                (6) Unfair Business Practice Under Cal. Bus. & Prof. Code §17200………………………………………12

                (7) Declaratory Relief ..................................................... 12

            c.   The sum of money at stake ................................................. 13

            d.   Dispute on material fact ..................................................... 13

            e.   Excusable Neglect ............................................................... 14

            f.   Decisions on the merits ...................................................... 14

    B.   The Court Should Grant All Reliefs Sought By Counterclaimants ......... 14

        1.   Lin is Entitled To Compensatory Damages On His Contract-Based and Common Counts Counterclaims ................................... 14

        2.   Lin is Entitled To Compensatory And Punitive Damages On His Fraud-Based Counterclaims ................................................ 15

            a.   Compensatory Damages .................................................... 15

            b.   Punitive Damages .............................................................. 16

        3.   Lin Is Entitled to Attorney's Fees for Counterdefendants' Violation of the Lanham Act ........................................ 19

        4.   Counterdefendants should be Permanently Enjoined from Use of the AG Mark ........................................................... 21

        5.   The Court Should Declare the AG Mark to be The Property of Lin or Order Cancellation of the AG Mark ................................... 22

6.    Counterclaimants Are Entitled To Costs
As The Prevailing Party……………………………………….22

IV.   Conclusion............................................................................................26

ACTIVE 26232930v2 07/07/2014

1

## **TABLE OF AUTHORITIES**

2
                                                                                    **Page(s)**

**FEDERAL CASES**

3

*Abercrombie & Fitch Co. v. Moose Creek, Inc.*
4        486 F.3d 629 (9th Cir. 2007) .......................................................................... 21

5
*Alameda Cnty. Elec. IndustryService Corp. v. Stuward*
6        C 11-05676 LB, 2014 WL 1365824 (N.D. Cal. Apr. 7, 2014) .............................. 14

7  *Aldabe v. Aldabe*
8        616 F.2d 1089 (9th Cir.1980) ............................................................................ 5

9  *Bennett v. Am. Med. Response, Inc.*
         226 Fed. Appx. 725 (9th Cir. 2007) .................................................................. 16
10

11 *Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*
         174 F.3d 1036 (9th Cir.1999) .......................................................................... 21
12

13 *Century 21 Real Estate Corp. v. Sandlin*
         846 F.2d 1175 (9th Cir. 1988) ........................................................................ 21
14

*Commercial Union Ins. Companies v. Greene*
15       CV 97-0393 SVW, 1998 WL 1661425 (C.D. Cal. Sept. 25, 1998) aff'd, 221
16       F.3d 1347 (9th Cir. 2000) ............................................................................... 18

17 *Craigslist, Inc. v. Naturemarket, Inc.*
18       694 F.Supp.2d 1039 (N.D.Cal.2010) ......................................................... 13, 14

19 *Eitel v. McCool*
20       782 F.2d 1470 (9th Cir.1986) .................................................................. 5, 6, 14

21 *Electra Entm't Grp., Inc. v. Crawford*
         226 F.R.D. 388 (C.D.Cal. 2005) ....................................................................... 6
22

23 *Fair Housing of Marin v. Combs*
         285 F.3d 899 (9th Cir.2002) ............................................................................. 6
24

25 *Geddes v. United Financial Group*
         559 F.2d 557 (9th Cir. 1977) ........................................................................... 5

26 *Glenn K. Jackson Inc. v. Roe*
27       273 F.3d 1192 (9th Cir. 2001) ........................................................................... 9

28

---

ACTIVE 26232930v2 07/07/2014

*Landstar Ranger Inc. v. Parth Enterprises, Inc*
   725 F.Supp.2d 916 ........................................................................ 14

*Microsoft v. McGee*
   490 F.Supp.2d 874 (S.D. Ohio 2007) ........................................... 20

*Philip Morris USA, Inc. v. Castworld Products, Inc.*
   219 F.R.D. 494 (C.D. Cal. 2003) .................................................... 6

*Philip Morris USA, Inc. v. Shalabi*
   352 F. Supp. 2d 1067 (C.D.Cal. 2004) ........................................ 22

*Polo Fashions, Inc. v. Dick Bruhm, Inc.*
   793 F.2d 1132 (9th Cir. 1986) ...................................................... 21

*TeleVideo Systems, Inc. v. Heidenthal*
   826 F.2d 915 (9th Cir. 1987) .......................................................... 5

*TXO Production Corp. v. Alliance Resources Corp.*
   509 U.S. 443 (1993) ...................................................................... 17

*Wecosign, Inc. v. IFG Holdings, Inc.*
   845 F. Supp. 2d 1072 (C.D. Cal. 2012) ....................................... 13

CALIFORNIA CASES

*Adams v. Murakami*
   54 Cal.3d 105 (1991) ................................................................... 18

*Avidor v. Sutter's Place, Inc.*
   212 Cal. App. 4th 1439, 151 Cal. Rptr. 3d 804 (2013) .................. 8

*CDF Firefighters v. Maldonado*
   158 Cal. App. 4th 1226, 70 Cal. Rptr. 3d 667 (2008) .................... 7

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*
   20 Cal. 4th 163 (Cal. 1999) ......................................................... 12

*Children's Hospital and Medical Center v. Bonta*
   97 Cal.App.4th 740 (2002) .......................................................... 16

*Chodos v. Insurance Company of North America*
   126 Cal. App. 3d 86 (1981) ................................................... 17, 19

*Christiansen v. Roddy*
   186 Cal.App.3d 780 (1986) .......................................................... 16

ACTIVE 26232930v2 07/07/2014

*Committee on Children's Television, Inc. v. General Foods Corp.*
   35 Cal. 3d 197, 197 Cal. Rptr. 783 (1983) ................................................................ 12

*Cummings Med. Corp. v. Occupational Med. Corp.*
   10 Cal.App. 4th 1291 (1993) ................................................................ 18

*Devlin v. Kearny Mesa AMC/Jeep/Renault, Inc.*
   155 Cal. App. 3d 381 (1984) ................................................................ 17

*Division of Labor Law Enforcement v. Transpacific Transportation Co.*
   69 Cal. App. 3d 268 (1977) ................................................................ 7

*Finney v. Lockhart*
   35 Cal.2d 161,162 (1950) ................................................................ 17

*Jaffe v. Carroll*
   35 Cal.App. 3d 53 ................................................................ 7

*Joslin v. Gertz*
   155 Cal. App. 2d 62, 317 P.2d 155 (1957) ................................................................ 8

*Kenly v. Ukegawa*
   16 Cal. App. 4th 49 (1993) ................................................................ 15

*Mike Davidov Co. v. Issod*
   78 Cal. App. 4th 597 (2000) ................................................................ 18

*Neal v. Farmers Ins. Exch.*
   21 Cal. 3d 910 (1978) ................................................................ 16, 17, 18, 19

*North Oakland Medical Clinic v. Rogers*
   65 Cal. App. 4th 824, 76 Cal. Rptr. 2d 743 (1998) ................................................................ 15

*Ochs v. PacifiCare of California*
   115 Cal. App. 4th 782, 9 Cal. Rptr. 3d 734 (2004) ................................................................ 8

*Rubin v. Green*
   4 Cal. 4th 1187 (Cal. 1993) ................................................................ 12

*Wang v. Massey Chevrolet*
   97 Cal. App. 4th 856, 118 Cal. Rptr. 2d 770 (2002) ................................................................ 12

*Zinn v. Fred R. Bright Co.*
   271 Cal. App. 2d 597, 76 Cal. Rptr. 663 (1969) ................................................................ 8

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**FEDERAL STATUTES**

15 U.S.C. § 1114 ..................................................................................... 5, 11

15 U.S.C. §§ 1114 and 1125(a) ..................................................................... 11

15 U.S.C. § 1116(a) ...................................................................................... 21

15 U.S.C. § 1120 ..................................................................................... 5, 10

15 U.S.C. § 1125(a) ........................................................................................ 5

Lanham Act, 15 U.S.C. § 1117(a) ................................................................. 19

U.S.C. § 521 .................................................................................................... 4

**CALIFORNIA STATUTES**

*Cal. Bus. & Prof. Code § 17200* ................................................................... 12

Cal. Bus. & Prof. Code § 17200, *et seq.* ......................................................... 5

Cal. Civ. Code § 1572 ..................................................................................... 9

Cal. Civ. Code §§ 1619-21 .............................................................................. 7

Cal. Civ. Code § 3289 ................................................................................... 15

Cal. Civ. Code § 3294 .............................................................................. 16, 17

Cal. Civ. Code § 3302 ................................................................................... 14

Cal. Code Civ. Proc. § 337a ............................................................................ 8

California Civil Code § 1709 ......................................................................... 15

**OTHER AUTHORITIES**

Cal. Civil Code ............................................................................................... 6

California Civil Code ...................................................................................... 9

California Civil Code are ................................................................................ 7

Fed.R.Civ.P. 55 .............................................................................................. 5

Fed.R.Civ.P. 55(b)(2) ..................................................................................... 6

Federal Rule of Civil Procedure 54(d) ................................................................22

FRCP 55(b) ...........................................................................................................4

Local Rule 55-1 .....................................................................................................4

Rules 54-2 ............................................................................................................22

1 <u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2 **I.     <u>INTRODUCTION</u>**

3        After initiating this lawsuit and barraging Counterclaimants and Third-Party

4 Plaintiff Peter K. Lin  and Agape Industrial, Inc. ("Agape") (collectively

5 "Counterclaimants" or "Lin") with multitude of baseless claims, Counterdefendants

6 Jun-En Enterprise ("JE") and Agape Industry Co., Ltd. ("AIC") and Third-Party

7 Defendants Shi Ru Yang (also known as Tony Yang and hereinafter referred as

8 "Yang") and Hsiu-Ying Lu ("Lu") (collectively "Counterdefendants") have now

9 dismissed their claims and conceded to an entry of default on all of the counterclaims.

10 In so defaulting, Counterdefendants have admitted to all factual allegations of the

11 Counterclaims. Lin now seeks a default judgment providing the following relief: (1)

12 monetary recovery consisting of compensatory damages, punitive damages, pre-

13 judgment interest, and attorney's fees and costs; and (2) a permanent injunction.

14 **II.    <u>STATEMENT OF FACTS</u>**

15        From about 1998 until 2004, Lin worked for Counterdefendants in Taiwan.

16 Declaration of Peter K. Lin ("Lin Decl.") ¶ 2. In *2004*, Lin return to the United States

17 and thus ceased his employment with Counterdefendants.  *Id.* at ¶ 3.  Once in the

18 United States, Lin went into business for himself and incorporated various entities,

19 including Agape Industrial, Inc. ("Agape") and Agape Industry, Inc. ("AII"), to

20 facilitate his business.  *Id.*  Through these entities, Lin sold metal products and

21 manufacturing machinery, including those manufactured by Counterdefendants, to

22 customers in the United States.  *Id.*

23        In early 2009, Lin and Counterdefendants entered into a written agreement by

24 which Counterdefendants agreed to pay Lin 8% commission on sales of

25 Counterdefendants' product over $1,000,000 effective May 1, 2009. Lin Decl. ¶ 6,

26 Exh. A; Counterclaim (Docket No. 68) ("CC") ¶¶ 12, 13, 19, 34, 36, 58. The parties

27 further agreed that Lin would be reimbursed for certain expenses associated with the

28 promotion and sales of Counterdefendants' products. Lin Decl. ¶ 6.  In reliance on this

agreement, Lin invested no less than $129,335.04 of his own money to market and promote Counterdefendants' machinery.  Lin Decl. ¶ 7. As a result, Lin generated multiple sales of Counterdefendants' machines, including orders from Locker Group Pty Ltd. on June 30, 2009 for $1,005,000.00 and on September 7, 2009 for $257,501.00.  Lin Decl. ¶ 8, Exhs. B, C; CC ¶¶ 13, 27-29, 42, 46, 54, 59, 61.  Based on these sales, Lin expected to receive commissions of $101,000.00.  Lin Decl. ¶¶ 8-10; CC ¶¶ 13, 15, 20, 42, 44, 46-47, 49, 56.  Counterdefendants failed to pay Lin any commissions.  Lin Decl. ¶¶ 9-10; CC ¶¶ 14, 21-22, 43, 46-47, 51, 55, 60. Lin made a further demand for payment on May 14, 2010, but Counterdefendants ignored this request, and to date, not a single penny of commissions has been paid to Lin.   Lin Decl. ¶¶ 10; CC ¶¶ 14, 22, 42, 44, 46-47, 51.

Additionally, in connection with his business, Lin developed, and first commercially used, a stylized "AG" logo (the "AG Mark") no later than February 2004 and has continued to use the AG Mark in commerce ever since.  Lin Decl. ¶ 11-12; CC at ¶ 64, 71, 77, 85.  However, Counterdefendants, who were aware of Lin's superior use of the AG Mark, used the Mark in connection with the sale of their products without Lin's knowledge or authorization. Declaration of Alan C. Chen ("Chen Decl."); Exh. A (Deposition of Hsin-Yi Chiu ("Chiu Depo") 97:5-98:1. Counterdefendants have admitted to using Lin's AG Mark to identify sales samples of at least two types of Counterdefendants' products. *Id*. These sales samples were sent to Counterdefendants' customers for the purpose of soliciting purchase. *Id*.

Moreover, Counterdefendants knowingly obstructed Lin's rights to the AG Mark by applying for a trademark registration for the AG Mark with the United States Patent and Trademark Office ("USPTO") on May 13, 2010.  Lin Decl. ¶¶ 14-15; CC at ¶¶ 63-64. Counterdefendants affirmed in their trademark application that their date of first use of the AG Mark for classes 6 (metal products) and 7 (machinery) was March 1, 2005, and knowingly submitted evidence Lin's use of the AG Mark as evidence of Counterdefendants' claimed first use. Such evidence comprised of

ACTIVE 26232930v2 07/07/2014

1   screenshots of Lin's website, complete with his company name, California address

2   and telephone number, and photographs of a machine manufactured by

3   Counterdefendants' competitors depicting Lin's AG Mark.  Lin Decl. at ¶¶ 14-15.  No

4   evidence of Counterdefendants' own use of the AG Mark was submitted in connection

5   with their trademark application.  *Id.*  Based on this fraudulent evidence,

6   Counterdefendants obtained registration to the AG Mark as U.S. Registration No.

7   3,969,166.  Chiu Depo 97:5-10.

8          With the fraudulently registered mark, Counterdefendants initiated this action

9   and asserted various baseless claims against Lin and Agape. As the weakness of the

10  asserted claims is exposed in the course of litigation, Counterdefendants have now

11  dismissed their claims and wholly abandoned their defense of the counterclaims.

12  Default against Counterdefendants on the counterclaims has been entered. (Docket

13  No. 174). Moreover, as the result of Counterdefendants' obstructive discovery

14  practices, on June 6, 2014, Magistrate Judge Segal imposed discovery sanctions

15  against Counterdefendants, prohibiting them "from presenting any evidence, including

16  declarations, not already produced as of the date of this Order to oppose any claim for

17  damages raised by Counterclaimants in any further proceedings in this action."

18  (Docket No. 178, p.16) and ordered Counterdefendants to pay, jointly and severally,

19  the sum total of $30,554.00 by July 24, 2014 (45 days from date of Order).

20         On May 26, 2014, in response to a Court order to Show Cause,

21  Counterdefendants stated that they "do not intend to contest this matter further" and

22  that "they will not come to trial this summer."  Counterdefendants' Response to Order

23  to Show Cause (Docket No. 170), 3:7-8.  On May 28, 2014, the Clerk entered default

24  against Counterdefendants (Docket No. 174) in accordance with the Court's May 28,

25  2014 Minute Order (Docket No. 173).

26         The parties began their meet and confer on the motion for default judgment as

27  early as May 14, 2014. *See* Chen Decl. ¶ 3. Lin has repeatedly asked that

28  Counterdefendants stipulate to judgment to conserve the parties' resources and to

---

**COUNTERCLAIMANTS' MOTION FOR DEFAULT JUDGMENT**

3

avoid judicial waste. *Id.* Counsel for the parties met and conferred on at least three separate occasions regarding the stipulation, culminating in the joint *ex parte* application to the Court for extension of the deadline to file the motion for default judgment (Docket Nos. 178, 180) and a formal written demand dated June 30, 2014. *Id.*at ¶4,  Exh. A.  However, despite Counterdefendants' repeated assurances regarding their interest to stipulate, Counterdefendants have yet to respond to Lin's proposed stipulation, necessitating filing of this motion in its entirety. *Id.* at 5.

## III.   ARGUMENT

### A.   Default Judgment Should Be Entered

#### 1.   The Procedural Prerequisites for Default Judgment Have Been Satisfied

A Plaintiff meets the procedural prerequisites for a default judgment in the Central District when the requirements of FRCP 55(b) and Local Rule 55-1 have been fulfilled.  Under Local Rule 55-1, application for entry of default judgment shall be accompanied by a declaration which both complies with FRCP 55(b) and addresses the following: (1) when and against what party the default was entered; (2) the identification of the pleading to which default was entered; (3) whether the defaulting party is an infant or incompetent person, and if so, whether that person is represented by a general guardian, committee, conservator or other representative; (4) that the Service Members Civil Relief Act (50 App. U.S.C. § 521) does not apply; and (5) that notice has been served on the defaulting party.

All the procedural requirements have been met here. Default against Counterdefendants on Counterclaimant's Counterclaims was entered on May 28, 2014 (Docket No. 174). Defendants are not minors or incompetent, or subject to the Service Members Civil Relief Act. Chen Decl. ¶7. Notice of the instant motion has been served by filing of this motion electronically via the ECF.

#### 2.   All Factual Allegations Contained in the Counterclaims Are Deemed Admitted

1    A plaintiff who obtains a default and applies for entry of default judgment need

2    not present facts supporting the defendant's liability. Liability is presumed from the

3    default. "The general rule of law is that upon default the factual allegations of the

4    complaint, except those relating to the amount of damages, will be taken as true."

5    *Geddes v. United Financial Group*, 559 F.2d 557, 560 (9th Cir. 1977); see also

6    *TeleVideo Systems, Inc. v. Heidenthal*, 826 F.2d 915, 917 (9th Cir. 1987).

7    Lin has asserted fourteen causes of action against Counterdefendants: (1)

8    breach of contract; (2) breach of contract under the Cal. Commercial Code; (3) general

9    fraud and fraud under the Cal. Commercial Code; (4) negligent misrepresentation; (5)

10   account stated; (6) book account; (7) money had and received; (8) goods and services

11   rendered; (9) implied-in-fact contract (10) failing of false or fraudulent document

12   under 15 U.S.C. §1120; (11) trademark infringement under 15 U.S.C. §1114; (12)

13   false designation of origin under 15 U.S.C. § 1125(a); (13) unfair business practice

14   under Cal. Bus. & Prof. Code § 17200, *et seq*.; and (14) declaratory relief.

15   By electing default, Counterdefendants have in effect admitted as true to all

16   factual allegations contained in the Counterclaims except those relating to the amount

17   of damages. As such, Counterclaimants are entitled the reliefs and monetary damages

18   discussed in detail below.

19   3.   The Court Should Exercise Its Discretion to Grant Default

20        Judgment

21   After entry of default by the Clerk, courts are authorized to grant default

22   judgment in their discretion. See Fed.R.Civ.P. 55; *Aldabe v. Aldabe*, 616 F.2d 1089,

23   1092 (9th Cir.1980). A court may consider the following factors in deciding whether

24   to enter default judgment: (1) the possibility of prejudice to the plaintiff; (2) the merits

25   of the plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of

26   money at stake in the action; (5) the possibility of a dispute concerning material facts;

27   (6) whether the default was due to excusable neglect; and (7) the strong policy

28   underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel*

1  *v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir.1986). "In applying this discretionary

2  standard, default judgments are more often granted than denied." *Philip Morris USA,*

3  *Inc. v. Castworld Products, Inc.*, 219 F.R.D. 494, 498 (C.D. Cal. 2003). When the

4  damages claimed are not readily ascertainable from the pleadings and the record, the

5  court may conduct a hearing to conduct an accounting, determine the amount of

6  damages, establish the truth of any allegation by evidence, or investigate any other

7  matter. Fed.R.Civ.P. 55(b)(2). All of the *Eitel* factors favor entry of default judgment

8  in the present case.

9                      a.      Prejudice to Counterclaimants

10       Counterdefendants have initiated this action, and, upon realizing that their

11  claims utterly lacked merit, elected to abandon their prosecution and defense of this,

12  leaving Lin with no means of recourse. Lin would suffer prejudice if default judgment

13  is not entered because he "would be denied the right to judicial resolution of the

14  claims presented, and would be without other recourse for recovery." *Electra Entm't*

15  *Grp., Inc. v. Crawford*, 226 F.R.D. 388, 392 (C.D.Cal. 2005).

16                      b.      The merits of the plaintiff's substantive claim and the

17                              sufficiency of the complaint

18       Lin has properly alleged all the necessary elements for his counterclaims. Since

19  a "well-pled allegations in the complaint regarding liability are deemed true" upon

20  entry of default, *Fair Housing of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir.2002),

21  Lin has established the merits of his claims and the sufficiency of the Complaint.

22                      (1)      *Contract-Based Claims*

23       The facts pleaded in the Counterclaims are sufficient to establish

24  Counterdefendants' liability for breach of contract (Counterclaim 1), breach of

25  contract under Cal. Civil Code (Counterclaim 2), and breach of implied-in-fact

26  contract (Counterclaim 9).

27       To establish a breach of contract under common law, five elements must be

28  proven: (a) the existence of a contract; (b) the plaintiff's performance or excuse for

---

**COUNTERCLAIMANTS' MOTION FOR DEFAULT JUDGMENT**

6

1    nonperformance; (c) the defendant's breach; and (e) damages to the plaintiff have

2    occurred as a result of the breach. *See CDF Firefighters v. Maldonado*, 158 Cal. App.

3    4th 1226, 1239, 70 Cal. Rptr. 3d 667 (2008).

4    　　　The elements to establish a breach of contract under the California Civil Code

5    are similar if not identical to those under the common law. There must exist a valid

6    contract, the claimant has performed or is excused from performing, the defaulting

7    party has breached on his performance, and damage has occurred to the claimant as a

8    result of the defaulting party's breach. *See Jaffe v. Carroll*, 35 Cal.App. 3d 53, 58-59.

9    　　　Alternatively, an implied-in-fact contract may be established by the conduct of

10   the parties, without spoken or written words, Cal. Civ. Code §§ 1619-21. An implied-

11   in-fact contract is breached just as an express contract is breached under common law.

12   *See Division of Labor Law Enforcement v. Transpacific Transportation Co.*, 69 Cal.

13   App. 3d 268, 275 (1977).

14   　　　For his contract-based claims, Lin has pleaded that in or around May 2009, he

15   and Counterdefendants entered into a written agreement by which Counterdefendants

16   agreed to pay him 8% commission on sales of Counterdefendants' products over

17   $1,000,000.  Lin Decl. ¶¶6, 8; CC ¶¶12-13, 19-20. Lin relied on this agreement and

18   performed all his obligations under the contract, including generating $1,262,501 in

19   sales of Counterdefendants' products. *Id*. Counterdefendants breached the agreement

20   by refusing to pay Lin the 8% commission he is entitled on these sales despite Lin's

21   repeated demand for the same. Lin Decl. ¶10; CC ¶¶14, 22. As a result of

22   Counterdefendants' breach, Lin suffered damages in the amount of the unpaid

23   commissions. Lin Decl. ¶¶ 8-10; CC ¶¶14, 22.  Thus, Lin has pleaded sufficient facts

24   for his contract-based claims, and these claims are meritorious.

25   　　　　　　　　　(2)    *Common Counts*

26   　　　The facts pleaded in the Counterclaims are sufficient to establish

27   Counterdefendants' liability for the common counts of account stated (Counterclaim

28

---

**COUNTERCLAIMANTS' MOTION FOR DEFAULT JUDGMENT**

7

5), open book account (Counterclaim 6); money had and received (Counterclaim 7); and goods and services rendered (Counterclaim 8).

Account stated is proven by (a) previous transactions between the parties establishing the relationship of debtor and credit; (b) an agreement between the parties, express or implied, on the amount due from the debtor to the creditor; and (c) a promise by the debtor, express or implied, to pay the amount due. *Zinn v. Fred R. Bright Co.*, 271 Cal. App. 2d 597, 600, 76 Cal. Rptr. 663 (1969).

A book account is established where there is a financial transaction(s) between the parties and an account of debits and credits involved in the transaction(s), on which a certain amount of money is owed. *See Joslin v. Gertz*, 155 Cal. App. 2d 62, 65-66, 317 P.2d 155 (1957); *see also* Cal. Code Civ. Proc. § 337a.

For money had and received, the defaulting party must have received money intended for the benefit of the claimant but did not use said money for the claimant's benefit nor return the money to the claimant. *See Avidor v. Sutter's Place, Inc.*, 212 Cal. App. 4th 1439, 1454, 151 Cal. Rptr. 3d 804 (2013).

Goods and service rendered provides for recovery of damages if the claimant acted pursuant to either an express or implied request for services from the defaulting party, which were intended to and did benefit the defaulting party. *Ochs v. PacifiCare of California*, 115 Cal. App. 4th 782, 794, 9 Cal. Rptr. 3d 734 (2004).

Here, Lin has sufficiently pleaded that he had a valid agreement with Counterdefendants by which he is entitled to payment of commission for sales of Counterdefendants' products. Lin Decl. ¶ 6; CC ¶¶ 12, 19, 42, 46, 49, 53. Pursuant to this agreement, Lin sold Counterdefendants' products and earned commissions in the amount of $101,000. Lin Decl. ¶ 8; CC ¶¶ 42, 46, 49, 53. An account was stated orally and in writing by and between Lin and Counterdefendants for the amount due. Lin Decl. ¶ 9-10; CC ¶ 42. Lin kept records of the transactions and made demands on Counterdefendants for the $101,000 due. Lin Decl. ¶¶ 9-10; CC ¶¶ 43, 46. Counterdefendants never objected to the amount demanded but failed to pay the same.

1  Lin Decl. ¶ 10; CC ¶¶ 43, 47, 51.  In failing to pay Lin, Counterdefendants received

2  and kept monies that were intended for Lin's benefit and failed to pay Lin for the

3  services rendered. CC ¶¶ 49, 50, 54-56. Accordingly, Lin has pleaded sufficient facts

4  for his common count claims, and they are meritorious.

5                    (3)    *Fraud-Based Claims*

6          The facts pleaded are sufficient to establish Counterdefendants' liability for

7  fraud (Counterclaim 3) and negligent misrepresentation (Counterclaim 4).

8          Under the common law, fraud is demonstrated through a knowingly false

9  misrepresentation made with the intention to deceive or induce reliance, which causes

10  justifiable reliance by a party who is harmed by said reliance. *See Glenn K. Jackson*

11  *Inc. v. Roe*, 273 F.3d 1192, 1201 (9th Cir. 2001); *Wilkins Nat'l Broadcasting Co.*, 71

12  Cal. App. 4th 1066, 1081 (1999). Alternatively, the California Civil Code provides

13  that a party to a contract engages in fraud when, with an intent to deceive another

14  party to the contract or induce him to enter into the contract, the party, or someone

15  acting with his connivance, (a) suggests as a fact something that is untrue and of

16  which the party does not believe to be true; (b) positively asserts, in a manner not

17  warranted by the information of the person making it, that which is not true, though he

18  believes it to be true; (c) suppresses that which is true while having knowledge or

19  belief of the fact; (d) makes a promise without any intention of performing it; or (e)

20  commits any other act fitted to deceive. Cal. Civ. Code § 1572.

21          Lin has pleaded that in or around May 2009, Yang promised to pay Lin 8%

22  commission on sales of Counterdefendants' products over $1,000,000 but had no

23  intention to fulfill this promise. Lin Decl. ¶¶6; CC ¶¶ 24-26. Yang made the

24  misrepresentation with the intention of defrauding Lin or without reasonable grounds

25  for believing it to be true. CC ¶¶ 27, 32. Relying on Yang's promise, Lin invested no

26  less than $138,171.46 of his own money to market and promote Counterclaimant's

27  product and generated $1,262,501 in sales for Counterdefendants. Lin Decl. ¶ 7-8; CC

28  ¶ 29. As a result of Counterdefendants' misrepresentation, Lin has been damaged in

no less than $138,171.46. Lin Decl. ¶ 7; CC ¶¶ 29, 32. As factual allegations are deemed true upon default, Lin has pleaded sufficient facts for his fraud claims, and they are meritorious.

(4)    *Filing of False or Fraudulent Documents under 15 U.S.C. §1120*

Lin has sufficiently pleaded his counterclaim for filing of false or fraudulent documents under 15 U.S.C. §1120 (Counterclaim 10). The section provides: "Any person who shall procure registration in the Patent and Trademark Office of a mark by a false or fraudulent declaration or representation, oral or in writing, or by any false means, shall be liable in a civil action by any person injured thereby for any damages sustained in consequence thereof."

Lin has pleaded in his Counterclaims and shown by Counterdefendants' deposition testimony that Counterdefendants made numerous false statements in connection with their application to USPTO for the registration of the AG Mark. First, Counterdefendants represented to the USPTO that they had developed and first used the AG Mark in commerce, when it was actually Lin who came up with the design of the AG Mark, applied it to his businesses' letterhead, business cards, and machinery as early as 2004. Lin Decl. ¶¶ 11-15; CC ¶¶ 62-69; Chiu Depo 60:8-14. Counterdefendants were aware of Lin's prior use of the AG Mark prior to filing their trademark application. Chiu Depo. at 60:8-14, 78:10-79:2, 84:10-18, 90:7-24, 93:15-18. Secondly, the documents submitted by Counterdefendants to the U.S.P.T.O. to demonstrate their first use were actually evidence of Lin's use: screenshots from a website developed by Lin as well as documents taken from Lin's hard drive. These documents clearly evidenced Lin's first use of the AG Mark and not Counterdefendants'. Lin Decl. ¶ 14; Chiu Depo. 60:2-61:2, 75:12-21, 77:20-78:9, 78:10-79:2,106:24-107:25, 175:24-176:15, 231:11-18, Ex. 43 & 44. Finally, Counterdefendants specified in their application a variety of trademark classes, specifically including classes 6 (metal products) and 7 (machinery), in which they

1  claimed to be using the AG Mark. However, Counterdefendants' 30(b)(6) witness

2  testified that, in fact, they never once used the AG Mark in these classes in the United

3  States. Chiu Depo. 63:5-11, 66:21-23, 67:4-19, 68:11-69:4, 69:23-70:5, 72:3-21, Exs.

4  39, 40, 41, 42, 44. Defendants clearly made these false statements with the intent to

5  mislead the U.S.P.T.O. into granting the trademark application, and the AG Mark was

6  indeed registered based on such false information. Accordingly, Lin has sufficiently

7  pleaded this claim and demonstrated its merits.

8                      (5)   *Trademark Infringement and False Designation of*

9                            *Origin under the Lanham Act*

10         Lin has sufficiently pleaded his claims for trademark infringement and false

11  designation of origin under 15 U.S.C. §§ 1114 and 1125(a) (Counterclaims 11 and

12  12). To succeed on a trademark infringement claim under 15 U.S.C. § 1114, a plaintiff

13  must show that a defendant used a reproduction or colorable imitation of a registered

14  mark "in connection with the sale, offering for sale, distribution, or advertising of

15  goods or services" in such a way as to cause a likelihood of confusion. To succeed on

16  a claim for false designation of origin, a plaintiff must show that a defendant used in

17  connection with goods or services "any word, term, name, symbol, or device, or any

18  combination thereof or any false designation of origin, false or misleading description

19  of fact, or false or misleading representation of fact, which is likely to cause

20  confusion."

21         Lin has pleaded in his Counterclaims and shown by Counterdefendants'

22  deposition testimony that Counterdefendants used the AG Mark in connection with

23  offering for sale their metal products without the authorization of its owner, Lin. CC

24  ¶¶ 70-75. Such uses of the AG Mark by Counterdefendants are likely to cause

25  confusion, mistake, or deceive the consuming public. CC ¶¶ 73, 79. Taking all factual

26  allegations pleaded as true, Lin has pleaded and shown by evidence that

27  Counterdefendants' used the AG Mark in violation of 15 U.S.C. §§ 1114 and 1125(a).

28

(6)     *Unfair Business Practice Under Cal. Bus. & Prof. Code §17200*

Lin has also asserted a meritorious claim under California Business and Professions Code § 17200 (Counterclaim 13). Instead of proscribing specific acts, § 17200 defines "unfair competition" as including "any unlawful, unfair or fraudulent business act or practice." Cal.Bus & Prof. Code § 17200. This language covers "anything that can properly be called a business practice and that at the same time is forbidden by law." *Rubin v. Green*, 4 Cal. 4th 1187, 1200 (Cal. 1993) (internal quotes omitted). Thus, the statute effectively "borrows violations of other laws and treats them as unlawful practices" that are "independently actionable." *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (Cal. 1999) (internal quotes omitted). A business act or practice is "fraudulent" if "members of the public are likely to be deceived." *Committee on Children's Television, Inc. v. General Foods Corp.*, 35 Cal. 3d 197, 214, 197 Cal. Rptr. 783 (1983). Unlike a claim for common law fraud, however, establishing a fraudulent business practice under Section 17200 requires no proof of intent, scienter, actual reliance or damages. *Id.* at 211; *Wang v. Massey Chevrolet*, 97 Cal. App. 4th 856, 871, 118 Cal. Rptr. 2d 770 (2002).

Here, Counterdefendants engaged in several types of illegal and fraudulent activities, including fraudulently inducing Lin into a contract on which Counterdefendants had no intention to pay, fraudulently registering the AG Mark with the U.S.P.T.O., and using the AG Mark without Lin's consent in violation of the Lanham Act. Based these on allegations of Counterdefendants' fraudulent and infringing activity, Lin's § 17200 claim is sufficiently pleaded and meritorious.

(7)     *Declaratory Relief*

Lin's final cause of action for declaratory relief is related to his trademark infringement and false designation of origin claims, by which Lin seeks a declaration by the Court cancelling Counterdefendants' fraudulently registered mark, and declaring all rights, title and interest in the AG Mark to be the property of Lin.

1  Because the allegations taken as true warrant this declaration, the Court should enter
2  default judgment on this claim.

3              c.      The sum of money at stake

4      "[This] Eitel factor examines the amount of money at stake in relation to the
5  seriousness of a defendant's conduct." *Craigslist, Inc. v. Naturemarket, Inc.*, 694
6  F.Supp.2d 1039, 1060 (N.D.Cal.2010).

7          Here, Lin requests compensatory damages for his contract-based claims in the
8  amount of $149,816.67, compensatory damages for his fraud-based claims in the
9  amount of $161,022.13, punitive damage for his fraud claim in an amount of no less
10 than $1,000,000, and attorney's fees and costs in an amount to be determined. This
11 sum of money at stake is not disproportionately large in light of Counterdefendants'
12 fraudulent and malicious conduct both in their underlying dealings with
13 Counterclaimants and during the course of this litigation. Such an award would be
14 consistent with other default judgment awards in the context of trademark
15 infringement. *Craigslist*, 694 F.Supp.2d at 1060 (holding that this factor weighed in
16 favor of default judgment where plaintiff asserted copyright, trademark, breach of
17 contract, and fraud claims and sought damages in the range of $1,177,827.07 to
18 $4,900,327.07).

19             d.      Dispute on material fact

20     "[This] Eitel factor examines the likelihood of dispute between the parties
21 regarding the material facts surrounding the case." *Craigslist*, 694 F.Supp.2d at 1060.
22 The fact that defendants initially participated in the litigation but subsequently
23 abandoned their defenses diminishes the likelihood of factual disputes. *Wecosign, Inc.*
24 *v. IFG Holdings, Inc.*, 845 F. Supp. 2d 1072, 1082 (C.D. Cal. 2012).

25         Upon recognizing the futility of their actions here in the United States,
26 Counterdefendants have deliberately abandoned their defense of this matter despite
27 orders from the court compelling their participation in further discovery. No dispute
28 on any material facts exists.

e.     Excusable Neglect

This factor favors default judgment when the defendant has been properly served or the plaintiff demonstrates that the defendant is aware of the lawsuit. *Landstar Ranger Inc. v. Parth Enterprises, Inc*, 725 F.Supp.2d 916, 922 (concluding that this factor favored default judgment and "possibility of excusable neglect is remote" where defendant had been properly served); *Craigslist*, 694 F.Supp.2d at 1061 ("Plaintiff has proffered evidence showing Defendants were clearly aware of the pending litigation.").

Here, as discussed above, Counterdefendants deliberately abandoned their prosecution and defense of the matter after nearly two years of litigation. The default was not the result of excusable neglect but a calculated decision.

f.     Decisions on the merits

Finally, while the policy favors decisions on the merits, where a defendant refuses to litigate a case as here, default judgment is appropriate. *See Craigslist,* 694 F.Supp.2d at 1061; *Alameda Cnty. Elec. IndustryService Corp. v. Stuward*, C 11-05676 LB, 2014 WL 1365824 (N.D. Cal. Apr. 7, 2014). Furthermore, by dismissing their original claims and abandoning their defense of the counterclaims, Counterdefendants have effectively conceded to the merits of the Counterclaims.

Because all of the *Eitel* factors weigh in Counterclaimants' favor, default judgment should be granted against Counterdefendants on all counterclaims.

**B.     The Court Should Grant All Reliefs Sought By Counterclaimants**

1.     Lin is Entitled To Compensatory Damages On His Contract-Based and Common Counts Counterclaims

Lin is entitled to compensatory damages suffered as a result of Counterdefendants' breach of contract and failure to pay the agreed upon commission (Counterclaims 1, 2, 5-10). "The detriment caused by the breach of an obligation to pay money only, is deemed to be the amount due by the terms of the obligation, with interest thereon." Cal. Civ. Code § 3302.

The agreement between Lin and Counterdefendants explicitly provided for an 8% commission to be paid on sales of machinery over $1 million.  Lin Decl. 6. Pursuant to their agreement, Lin submitted purchase orders in the amounts of $1,005,000.00 and later $257,501.00, totaling $1,262,501.00.   Lin Decl. 8.  At 8%, Lin is entitled to $101,000.00 in commissions. *Id.* at ¶¶ 8-10.

Further, Lin is due interest on the outstanding commissions.  *See* Cal. Civ. §§ 3287, 3302; *North Oakland Medical Clinic v. Rogers*, 65 Cal. App. 4th 824, 828, 76 Cal. Rptr. 2d 743 (1998) (interest due on a breach of contract is not discretionary). Given that the contract was entered into after January 1, 1986, and does not specify a legal rate of interest, the statutorily imposed interest rate is 10% per annum.  Cal. Civ. Code § 3289.  Lin submitted the purchase orders, on which commissions were due, in September 2009. Lin Decl. 8. The interest on the commissions and expenses reimbursement has been accruing since September 2009, and, as the date of filing (4 years and 10 months), amounts to $48,816.67. Interest will continue to accrue until entry of judgment.  Accordingly, Lin is entitled to compensatory damages on his contract-based claims, inclusive of interest, in the amount of **$149,816.67**.

### 2.   Lin is Entitled To Compensatory And Punitive Damages On His Fraud-Based Counterclaims

Lin is also entitled to compensatory and punitive damages on his fraud-based claims, including the Third Counterclaim for fraud and Fourth Counterclaim for Misrepresentation.

### a.   Compensatory Damages

California Civil Code section 1709 provides: "one who willfully deceives another with intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers." In California, a defrauded party is ordinarily limited to recovering his "out-of-pocket" loss, i.e., the difference between the value with which he parted and the value he received. *Kenly v. Ukegawa*, 16 Cal. App. 4th 49, 53 (1993). In cases where defendants, by fraudulent misrepresentation, induced

1 plaintiffs into making an investment of money, the return of the invested amount is the
2 proper compensatory damage. *Christiansen v. Roddy*, 186 Cal.App.3d 780, 790
3 (1986).

4        In reliance on Counterdefendants' false promises to pay commission, Lin
5 invested no less than $129,335.04 of his own money to market and promote
6 Counterdefendants' products. Lin Decl. ¶ 7, Exh. B. Lin is further entitled to interest
7 on his fraud damages at the rate of 7% per annum. *Children's Hospital and Medical*
8 *Center v. Bonta*, 97 Cal.App.4th 740, 775 (2002), citing California Constitution,
9 Article XV, § 1. Lin incurred the above-referenced expenses in 2009. Thus, interest on
10 the Lin's fraud damages has been accruing for 3.5 years since, at the latest, January 1,
11 2010. Lin is therefore entitled to interest in the amount of $31,687.08. Lin is entitled
12 to recover the full amount of his investment plus interest as compensatory damages
13 for Counterdefendants' fraud, totaling **$161,022.13**.

14                  b.    Punitive Damages

15        "In an action for the breach of an obligation not arising from contract, where it
16 is proven by clear and convincing evidence that the defendant has been guilty of
17 oppression, fraud, or malice, the plaintiff, in addition to the actual damages, may
18 recover damages for the sake of example and by way of punishing the defendant."
19 Cal. Civ. Code § 3294. Where punitive damages are recoverable on a claim, they can
20 be awarded on default if properly established with adequate and proper evidence. *See,*
21 *e.g., Bennett v. Am. Med. Response, Inc.*, 226 Fed. Appx. 725, 729 (9th Cir. 2007).
22 The California Supreme Court set forth three pertinent factors in evaluating the size of
23 a punitive damage award: (1) the reprehensibility of the conduct, (2) the wealth of the
24 defendant and (3) a comparison to either the compensatory damages awarded or harm
25 caused. *See Neal v. Farmers Ins. Exch.*, 21 Cal. 3d 910 (1978)

26        Here, Counterdefendants' fraudulent conduct is highly reprehensible.
27 Counterdefendants promised under false pretenses to pay Lin commission to induce
28 him to invest and expend substantial resources and monies in promoting

---

**COUNTERCLAIMANTS' MOTION FOR DEFAULT JUDGMENT**
16

1  Counterdefendants' products even though Counterdefendants had no intention of

2  paying the promised commissions. Counterdefendants further acted with malice,

3  oppression and fraud under California Civil Code section 3294 by fraudulently and

4  knowingly registering trademark owned by Lin for the express purpose of preventing

5  Lin from using the mark he designed and developed.  Finally, Counterdefendants filed

6  this baseless lawsuit against Lin, forced him to incur hundreds of thousands of dollars

7  to defend this lawsuit, and now wholly abandoned prosecution and defense of this

8  lawsuit without any regard for consequences of their misconduct (presumably due to

9  jurisdictional limits of this Court over the foreign parties). Counterdefendants have

10  grossly abused the legal system for the singular purpose of oppressing Lin and his

11  business ventures. This type of conduct is particularly offensive and presents

12  circumstances in which it is appropriate for the court to award punitive damages.

13      While a punitive award must bear a reasonable relationship to the compensatory

14  damages awarded and/or the harm caused, "there is no fixed ratio by which to

15  determine the reasonableness of that relationship."  *Devlin v. Kearny Mesa*

16  *AMC/Jeep/Renault, Inc.*, 155 Cal. App. 3d 381, 390 (1984). For example, the United

17  States Supreme Court in *TXO Production Corp. v. Alliance Resources Corp.*, 509 U.S.

18  443 (1993),  upheld, against a due process challenge, a jury verdict of $10 million in

19  punitive damages, where the jury had awarded the plaintiff only $19,000 in

20  compensatory damages. In *Neal*, *supra*, the California Supreme Court upheld a

21  punitive damage award of $740,000 where the plaintiff proved compensatory damages

22  of less than $10,000. In *Chodos v. Insurance Company of North America*, 126 Cal.

23  App. 3d 86 (1981), the court of appeal confirmed an award of $200,000 in punitive

24  damages where compensatory damages were awarded in the amount of $5,146.71.

25  Courts have affirmed punitive damage awards with a ratio of as high as 2000 to 1. *See*

26  *Finney v. Lockhart*, 35 Cal.2d 161,162, 165 (1950).

27      Here, Counterdefendants' wealth based on past sales justifies a high award of

28  punitive damages.  The purpose of punitive damage is to "punish wrongdoing and

thereby to protect [the public] from future misconduct, either by the same defendant or other potential wrongdoers." *Adams v. Murakami*, 54 Cal.3d 105, 110 (1991). The function of deterrence will not be served "if the wealth of the defendant allows him to absorb the award with little or no discomfort or … if the award … exceeds the level necessary to punish and deter" *Neal*, 21 Cal. 3d at 928. "In relating this inquiry to the defendant's wealth, courts and commentators have often looked to the profitability of the defendant's misconduct." *Cummings Med. Corp. v. Occupational Med. Corp.*, 10 Cal.App. 4th 1291, 1299 (1993) (finding that "defendant's profits from misconduct are objectively based and uniquely appropriate as the basis for punitive damages.") This profit-based assessment for punitive damages is especially appropriate where, as is the case here, evidence of a defendant's financial condition or net worth is made unavailable by defendant's resistance to plaintiff's discovery efforts. *See Commercial Union Ins. Companies v. Greene*, CV 97-0393 SVW, 1998 WL 1661425 (C.D. Cal. Sept. 25, 1998) aff'd, 221 F.3d 1347 (9th Cir. 2000).

Moreover, Counterdefendants, through their abuse of the discovery process, have prevented Lin from obtaining additional evidence of their financial condition. Counterdefendants are estopped from objecting to the absence of such evidence in challenging a punitive damage award. See *Mike Davidov Co. v. Issod*, 78 Cal. App. 4th 597 (2000).

Based on all of the above, Lin respectfully requests that the Court award punitive damages in the amount of **no less than $1,000,000**. Counterdefendant Jun-En, through its designated representative, testified that Jun-En's annual gross sale amounts to $12,000,000 (Chiu Depo 41:12-24), with an average profit margin of twelve percent (12%) (Chiu Depo 43:14-17). Based on those figures, Counterdefendants' annual profit for the relevant time period was about $1,440,000 per year. Lin's requested punitive damage equals to slightly over two thirds of Counterdefendants' profit in a single year. In addition, the amount approximates twice the total attorney fees (roughly $450,000) incurred by Lin in defense and prosecution

of Counterdefendants' frivolous lawsuit, or four times the actual loss four times the actual loss incurred by Lin as a result of Counterdefendants' fraudulent conduct ($101,000 for commission and $129,335.04 in expenses). Finally, an award of punitive damages in the amount of $1,000,000 for $129,335.04 in compensatory damages equates to less than a 8 to 1 ratio that is well within the bound of reasonableness. *See Neal*, *supra*; *Chodos v. Insurance Company of North America*, *supra.*

The requested punitive damages award would serve the intended purpose of punishment without bankrupting Counterdefendants. Given the reprehensibility of Counterdefendants conduct, the Court should award punitive damages against Counterdefendants in the amount of no less than $1,000,000.

3. <u>Lin Is Entitled to Attorney's Fees for Counterdefendants' Violation of the Lanham Act</u>

The Lanham Act, 15 U.S.C. § 1117(a), authorizes recovery of "(1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the cost of the action." In addition, "[i]f the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court find to be just, according to circumstances of the case." *Id.* "The court in exceptional cases may award reasonable attorney fees to the prevailing party." *Id.*

Here, Counterdefendants' misconduct is so egregious that the Court must deem the case exceptional and award reasonable attorney fees to Lin. There is no question that Counterdefendants willfully used the counterfeit of Lin's AG Mark. Counterdefendants maliciously applied for registration of the AG Mark in 2010, after they parted ways with Lin. Chiu Depo 93:15-18. Even though Counterdefendants have not conducted any business in the U.S. in any form since they ceased doing business with Lin (Chiu Depo 24:17-26:20, 51:7-10, 56:4-58:2, 64:1-2, 83:17-84:3), they nevertheless applied to register the AG Mark for the express purpose of stopping Lin

from using his AG Mark. Chiu Depo 97:5-10. In submitting documents to support their trademark application, Counterdefendants used photos obtained from Lin's computer, depicting Lin's use of the AG Mark on a machine manufactured by competitors of Counterdefendants. Chiu Depo. at 58:8-59:7, 60:2-61:2, 75:12-21, 77:20-78:9, 78:10-79:2, Exs. 37, 38, 43 & 44. Counterdefendants further used fraudulently registered AG Mark to promote their goods by attaching labels bearing the AG Mark to sales samples sent to their customers. Chiu Depo. at 63:5-11, 66:21-23, 67:4-19, 68:11-69:4, 69:23-70:5, 72:3-21, Exs. 39, 40, 41, 42, 44. Counterdefendants engaged in each of the above described acts intentionally and with full knowledge of Lin's superior rights to the AG Mark. Chiu Depo. at 60:8-14,78:10-79:2, 84:10-18, 90:7-24, 93:15-18. The sole purpose of such conduct is to prevent Lin from exercising his legitimate rights over the AG Mark. Counterdefendants' conduct is especially reprehensible and requires deterrence as they have admitted to registering a mark that they have no intention of using in commerce for the sole purpose of blocking Lin's rightful use of said mark. Counterdefendants' efforts to claim (albeit fraudulently) the rights to the AG Mark is clear evidence of its value.

Furthermore, as a result of Counterdefendants' obstructive conduct during discovery (which resulted in sanctions by Magistrate Judge Segal (Docket No. 178)), Lin has been unable to determine the exact amount of expenses saved, profits reaped, and the revenues lost as a result of Counterdefendants' infringement. The Court should impose the maximum damage allowed under the Lanham Act, including attorney's fees, to compensate Lin for all of Counterdefendants' misconduct. *See Microsoft v. McGee*, 490 F.Supp.2d 874, 882 (S.D. Ohio 2007) (court finding that maximum "statutory damages are appropriate in default judgment cases because the information needed to prove actual damage is within the infringers' control and is not disclosed.")

Given the extraordinary display of fraud, malice and oppression by Counterdefendants, the Court should deem this case exceptional and award Lin

1   reasonable attorney's fees and costs. Counterclaimants hereby request that the Court

2   enter default judgment against Counterdefendants declaring that Counterclaimants are

3   entitled to reasonable attorney's fees and costs, and permit Counterclaimants to submit

4   a separate accounting for attorney's fees and costs, following entry of default

5   judgment to determine the amount of the reasonable attorney's fees and costs.

6          4.     <u>Counterdefendants should be Permanently Enjoined from Use of</u>

7                 <u>the AG Mark</u>

8          The Lanham Act provides that a court may grant injunctive relief in favor of a

9   trademark owner to prevent further acts of infringement. 15 U.S.C. § 1116(a); *Polo*

10  *Fashions, Inc. v. Dick Bruhm, Inc.*, 793 F.2d 1132, 1135-36 (9th Cir. 1986) (holding

11  that the Lanham Act does not require showing of threat of future harm for issuance of

12  injunction). To obtain a preliminary injunction in a trademark case, a plaintiff must

13  demonstrate "either (1) a combination of probable success on the merits and the

14  possibility of irreparable injury or (2) the existence of serious questions going to the

15  merits and that the balance of hardships tips sharply in his favor." *Brookfield*

16  *Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1045 (9th Cir.1999).

17  "Irreparable injury is ordinarily presumed upon a showing of a likelihood of success."

18  *Abercrombie & Fitch Co. v. Moose Creek, Inc.*, 486 F.3d 629, 633 (9th Cir. 2007).

19         Lin has succeeded on the merits of his trademark claims as all factual

20  allegations other than those relating to amount of damages are deemed admitted by

21  Counterdefendants upon the entry of default. Irreparable harm is therefore presumed.

22  Additionally, the balance of hardship clearly weighs in favor of Lin. Without an

23  injunction order, Lin would be in the impossible position of having to file successive

24  lawsuits each time they discover any infringement by Counterdefendants in the future.

25  *See Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1180 (9th Cir. 1988)

26  (injunctive relief is the remedy of choice for trademark and unfair competition cases,

27  since there is no adequate remedy at law for the injury caused by a defendant's

28  continuing infringement). In contrast, an injunction would only prevent

---

**COUNTERCLAIMANTS' MOTION FOR DEFAULT JUDGMENT**
21

1   Counterdefendants from continuing to violate the law and would result in no hardship

2   whatsoever. *See Philip Morris USA, Inc. v. Shalabi*, 352 F. Supp. 2d 1067, 1075

3   (C.D.Cal. 2004) ("Plaintiff is only seeking to enjoin illegal activity. The injunction

4   will not adversely affect any of Defendants' legitimate business operations, nor will

5   they suffer any cognizable hardship as a result of its issuance.").

6        As Lin has demonstrated both the propriety and necessity of a permanent

7   injunction, Counterdefendants must be enjoined from (1) infringing the AG Mark

8   which rightfully belong to Counterclaimants; and (2) importing, selling, or marketing

9   merchandise in any way that tends to deceive, mislead, or confuse the public into

10   believing that Counterdefendants' merchandise is in any way sanctioned by or

11   affiliated with Counterclaimants.

12          **5.**    <u>The Court Should Declare the AG Mark to be The Property of Lin</u>

13               <u>or Order Cancellation of the AG Mark</u>

14        As Counterdefendants, by defaulting, has admitted that Lin is the rightful owner

15   to all rights, title, and interest in the AG Mark, and that Counterdefendants registered

16   the AG Mark with photos of Lin's use of the AG Mark, Lin is entitled to a declaration

17   that all rights, title, and interest in the AG Mark are the property of Lin. In the

18   alternative, Counterdefendants' registration should be cancelled based on fraud on the

19   USPTO, so that Lin may register the mark rightfully.

20          **6.**    <u>Counterclaimants Are Entitled To Costs As The Prevailing Party</u>

21        As the prevailing party in this action, Counterclaimants are also entitled to

22   recover all costs reasonably incurred in this litigation in accordance with Federal Rule

23   of Civil Procedure 54(d) ("…costs…should be allowed to the prevailing party").

24   Pursuant to Rule 54(d) and Local Rules 54-2, Counterclaimants will submit a Notice

25   of Application to the Clerk to Tax Costs and Proposed Bill of Costs identifying and

26   documenting the specific costs that it seeks to recover.

27   //

28   //

---

IV.   **CONCLUSION**

For the foregoing reasons, default judgment should be entered against Counterdefendants as follows:

| | |
|---|---|
| Compensatory Damages for Contract Claims | $149,816.67 |
| Compensatory Damages for Fraud Claims | $161,022.13[1] |
| Punitive Damages for Fraud Claims | $1,000,000 |
| TOTAL | **$1,310,838.80** |

Counterclaimants further request that the Court (1) award attorney's fees and costs under the Lanham Act in an amount to be determined in a separate motion, (2) issue a permanent injunction against Counterdefendants for use of the AG Mark, (3) declare that Counterdefendants' registration of the AG Mark, USPTO registration no. 3,969,166, to be fraudulent, and (4) order that all rights, title and interest in the AG Mark be transferred to Lin or be cancelled within 10 days from the Court's Order.

Respectfully submitted,

Dated: July 7, 2014                                  FOX ROTHSCHILD LLP

By:   /s/ Alan C. Chen
      Thomas T. Chan
      Alan C. Chen
      Grace Y. Du
      Attorneys for Counterclaimants/Third-Party
      Plaintiff PETER K. LIN and AGAPE
      INDUSTRIAL INC.

---

[1] Alternatively, Lin requests this amount to be awarded as part of his compensatory damages for his contract-based claims and common counts.

COUNTERCLAIMANTS' MOTION FOR DEFAULT JUDGMENT
23